MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:        2016 ME 18
Docket:          And-15-93
Submitted
 On Briefs:   November 19, 2015
Decided:      January 26, 2016

Panel:           SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.

## IN RE C.P. et al.

SAUFLEY, C.J.

[¶1]  The parents of six-year-old C.P. and her five-year-old sister, C.P., appeal from an amended judgment entered in the District Court (Lewiston, *Oram, J.*) terminating their parental rights to their daughters.  The mother did not appear at the trial, and the father stipulated at the outset of the trial that he was unfit to care for his daughters.  The hearing focused on the parents' arguments that the girls should be placed in a permanency guardianship with their paternal grandparents rather than being freed for adoption through the entry of a judgment terminating the parental rights of their parents.

[¶2]  The procedure was complicated by the resignation of the trial judge (*Schneider, J.*) from the bench shortly after the trial and one day after the entry of judgment.  The amended judgment that is on appeal was entered by a different judge (*Oram, J.*) after that resignation.  The parents argue that the entry of the initial termination order violated their due process rights because it was drafted by

an Assistant Attorney General and did not reflect the trial court's independent judgment, and they argue that the successor judge should have held a new trial instead of entering an amended judgment. The parents also argue that the court should have established a permanency guardianship with the girls' paternal grandparents instead of terminating the parents' parental rights to free the children for adoption.[1] We affirm the judgment.

## I. BACKGROUND

[¶3]  In December 2012, the Department of Health and Human Services petitioned for a child protection order for C.P. (then age three) and C.P. (then almost two years old). The Department did not seek an order of preliminary protection because the mother agreed to a safety plan pursuant to which the children would stay with their paternal grandparents, with whom the mother was also living, while the mother began receiving services. The father was in prison with no expectation of release until at least September 2015.

[¶4]  Due to conflict with the grandparents, the mother moved out of the grandparents' home after two or three months. The Department supported this transition. In April 2013, however, the Department requested a preliminary protection order after the mother relapsed into substance abuse, relocated with the

---

[1]  The father also argues that the judge who entered the initial termination order lacked the authority to do so because he had resigned. In fact, the judge's resignation took effect the day after the judgment was entered.

girls without family team involvement, and left the girls with other family members who could not take care of them.

[¶5] The court (*Beliveau, J.*) signed a preliminary protection order placing the girls in the Department's custody. The girls were placed in a foster home. The mother waived the opportunity for a summary preliminary hearing, and a jeopardy order was entered with both parents' consent on April 29, 2013. Approximately a year later, on April 17, 2014, the Department petitioned for termination of the parents' parental rights to the children.

[¶6] In July 2014, the father, joined by the mother, moved for an expedited judicial review hearing seeking to have the court again consider placement of the girls with their paternal grandparents. The court (*Schneider, J.*) held an expedited judicial review hearing regarding placement on August 25 and 27, 2014. After hearing from the paternal grandparents, the paternal grandmother's psychiatrist, the foster mother, and Department employees, the court denied the parents' request that the girls be placed in the grandparents' home, in part because the grandparents could not meet the requirements to receive a foster care license.

[¶7] On November 4, 2014, the court held a hearing on the petition to terminate parental rights. The parties agreed that the court could consider all of the testimony from the previous judicial review hearing. The mother did not attend the

4

hearing. She had violated the terms of her probation, resulting in an active warrant for her arrest.

[¶8] At the outset of the hearing, the father, who remained incarcerated, conceded his parental unfitness based on his inability to reunify with the children in time to meet their needs. The court then received additional evidence regarding the best interests of the children, including evidence related to their placement, their need for permanency, and their developing relationship with a potential adoptive mother. After the hearing, the parents argued that the court should place the children with their grandparents and asked that the court appoint the grandparents as permanency guardians. *See* 22 M.R.S. § 4038-C (2015).

[¶9] Sometime after the hearing, the court, through the clerk's office, asked the Assistant Attorney General to draft a proposed order. The AAG drafted two proposed orders—one granting the termination petition and one denying it. She shared these drafts with the parties' counsel, the guardian ad litem, and the clerk's office electronically on January 28, 2015, conveying to them her understanding from the court that an order would be entered quickly. Counsel received paper copies of the proposed orders on January 30, 2015.

[¶10] The court entered an order terminating both parents' parental rights to the two girls on February 3, 2015. The judge who issued the order left the bench through a planned resignation, effective the next day, February 4, 2015.

[¶11]   The mother, joined by the father, moved to alter or amend the judgment or for a new trial, *see* M.R. Civ. P. 59, on the ground that the court had not exercised independent judgment but had instead adopted one of the AAG's drafts verbatim without affording the parents' counsel an opportunity to submit proposals.   The parents sought a denial of the petition for termination or, in the alternative, a new trial.   The father also moved to alter or amend the judgment and for amended or additional findings, *see* M.R. Civ. P. 52,[2] 59, on the grounds that the court's findings conflicted with its earlier findings regarding placement with the grandparents and that another transition would be detrimental to the children. The mother filed a notice of appeal.

[¶12]   On May 4, 2015, the court (*Oram, J.*) denied the motions for a new trial and to alter or amend the judgment, *see* M.R. Civ. P. 59, but granted the motion for amended or additional findings, *see* M.R. Civ. P. 52.   On the same day, the court entered an amended judgment with extensive findings.   Based on the court's review of the entire record, including recordings of the August proceedings and a transcript of the November 4 hearing, it reaffirmed the termination of parental rights and declined to order a permanency guardianship with the grandparents.   The court found that, although the grandparents love the children

---

[2]   Maine Rule of Civil Procedure 52 was recently amended but not in any way that affects this appeal. *See* 2015 Me. Rules 15 (effective Sept. 1, 2015).

6

and wish to provide a permanent home for them, they were not approved to serve as licensed foster parents; were not forthcoming about their marital problems or the impact of those problems on the grandmother's mental health; minimized the seriousness of the grandmother's struggles with depression and her attempts at suicide; had difficulty setting limits with the mother; and would have difficulty financially supporting the children without being approved as a foster home and receiving an adoption subsidy. Additionally, the court found that the father's release from prison could present an increased risk of instability for the children if the children were living with the grandparents.

[¶13] The court found that the children need a consistent, fully attentive caregiver who can supply predictability, and that a licensed adoptive home has been identified for the children. The court found that the potential adoptive mother had provided two weeks of respite for the foster family and that, after some boundary testing and disruptive behavior, the children became fond of her and now speak positively of their time with her. The court ultimately found that the children are able to transition easily to the pre-adoptive home for visits.

[¶14] Based on these supported factual findings, the court determined that, although the parents favor a permanency guardianship with the grandparents so that the parents might continue to have a relationship with the girls, it would not be

in the girls' best interests, in part because the parents could disrupt the stability and permanency that these children need. *See* 22 M.R.S. § 4038-C(6).

[¶15] The father filed his notice of appeal, and we consolidated the parents' appeals.

## II. DISCUSSION

[¶16] The parents challenge (A) the initial entry of an order that was drafted by the AAG; (B) the entry of the amended judgment; and (C) the determination that the termination of parental rights, rather than a permanency guardianship with the grandparents, is in the best interests of the children. We discuss each issue separately.

## A. Entry of an Order Drafted by the Assistant Attorney General

[¶17] The parents first argue that the court's procurement of draft orders from the AAG and its signing of one of those draft orders violated their rights of procedural due process.[3] "When the state seeks to terminate the relationship between a parent and child, it must do so by fundamentally fair procedures that meet the requisites of due process." *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222. "Due process is not a static concept; rather, its requirements vary to

---

[3] It appears from the record that the clerk's office notified only the Assistant Attorney General that the judge had requested a draft order and failed to copy the other attorneys on the request. Because the AAG provided copies of the two proposals to the other attorneys and the guardian ad litem, and alerted them to the court's request, this irregularity did not affect the fundamental fairness of the proceedings. *See In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222.

8

assure the basic fairness of each particular action according to its circumstances." *Id.* (quotation marks omitted). Fundamentally fair procedures provide "an opportunity to be heard upon such notice and proceedings as are adequate to safeguard the right which the particular pertinent constitutional provision purports to protect." *Id.* (quotation marks omitted). Courts must consider

> (1) the private interest that will be affected by the government's action; (2) the risk of an erroneous deprivation of such an interest through the existing procedure and the probable utility of additional or substitute procedural safeguards; and (3) the government's interest in adhering to the existing procedure, including the fiscal and administrative burdens that additional procedures might entail.

*Id.* (quotation marks omitted).

[¶18]  We previously reviewed a parent's complaint "that the District Court adopted several pages of findings purposed by the State without significant change." *In re Marpheen C.*, 2002 ME 170, ¶ 7, 812 A.2d 972. Although such "a verbatim adoption of findings proposed by one party in a case is disfavored, as such an approach suggests that the court has not applied its independent judgment in making its findings and conclusions . . . fact-finding can be aided by parties submitting and trial courts considering and utilizing, where appropriate, draft findings of fact offered by either side." *Id.*  "The key question is whether the court findings reflect the application of judgment by the court, and not simply one of the parties." *Id.*

[¶19] We "must closely scrutinize such findings to determine whether the trial court has adequately performed its judicial function." *In re Sabrina M.*, 460 A.2d 1009, 1013 (Me. 1983). "In reviewing whether the trial court performed its judicial function, we must determine whether the findings adequately indicate the factual basis of the ultimate conclusion." *Id.* If the proposed findings are argumentative or insufficiently objective because they are drafted by a party, a judgment adopting those findings may be defective. *Id.*; *see also Clifford v. Klein*, 463 A.2d 709, 712-13 (Me. 1983).

[¶20] Most recently, we affirmed a child protection order when it was "evident that the court developed its own order" by using the proposed findings and adjusting or adding statements as needed to reach its findings and conclusions. *In re Marpheen C.*, 2002 ME 170, ¶ 7, 812 A.2d 972. We also upheld a judgment that a party drafted in accordance with a trial court's oral findings. *In re Allison H.*, 1999 ME 176, ¶ 8, 740 A.2d 997.

[¶21] The present case poses a closer question because the trial court sought the proposed orders outside of a discussion with all counsel, and it adopted verbatim one of the two orders drafted by the AAG. Although neither of the unsigned drafts is included in the record, either electronically or on paper, the parties do not dispute the suggestion by the successor court (*Oram, J.*) that the court (*Schneider, J.*) adopted one of the proposed orders verbatim.

[¶22]   Although the process employed was not ideal, a review of the entire trial record demonstrates that the court (*Schneider, J.*) applied its judgment in determining that the order terminating the parents' parental rights—and not the order appointing permanency guardians—vindicated the children's best interests. The court considered three days of testimony; the findings ultimately entered by the court, even if drafted by one party, are fully supported in the record; the mother did not even attend the trial; the father conceded his unfitness; and the real focus of the trial was the potential for a guardianship with the grandparents.

[¶23]   On this record, we do not conclude that the parents' rights were prejudiced by the process employed.  Our conclusion is further supported by the successor judge's thorough review of the record.  The successor judge's careful analysis of the evidence minimized any prejudice that could have arisen from the mechanism employed to generate the initial judgment.  Thus, although "the private interest that will be affected by the government's action"—the right to the care and custody of the parents' children—is substantial, the risk of erroneous deprivation is not so high in this matter that additional process is necessary.  *In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222 (quotation marks omitted).

B.    Entry of an Amended Judgment

[¶24]   The parents argue that the court (*Oram, J.*) could not resolve the issues presented by the parents' motions without holding a new trial.  Although the

Maine Rules of Civil Procedure provide guidance about proceeding with a trial or hearing that was commenced but not completed before a judge resigned, *see* M.R. Civ. P. 63(a),[4] the Rules do not resolve the question of how a successor judge should proceed on a post-judgment motion filed after a judge has resigned.

[¶25]  Pursuant to M.R. Civ. P. 52(b) and 59(e), a party may move to alter or amend the judgment, or for a court to amend its findings or make additional findings, within 14 days after entry of the judgment.  "Rule 59(e) is not to be interpreted as authorizing a [judge] to entertain a motion to alter or amend the judgment, decree or order of another [judge] of the same court except in extraordinary circumstances such as in the case of the decreeing [judge]'s death, *resignation*, sickness or other disability."  *Warren v. Waterville Urban Renewal Auth.*, 259 A.2d 364, 367 (Me. 1969) (emphasis added); *see also Burrow v. Burrow*, 2014 ME 111, ¶ 26, 100 A.3d 1104 (remanding a family matter for further fact-finding after a judge's retirement and indicating that the court on remand could, in its discretion, make findings "based on the record already created").

[¶26]  In the context of a criminal appeal, we upheld a successor justice's authority to decide a motion for a new trial when the successor justice reviewed the record, including transcripts and exhibits, from the original trial held five years

---

[4]  Rule 63 was recently amended, but subdivision (a) underwent no substantive revision.  *See* 2015 Me. Rules 10 (effective Sept. 1, 2015).

earlier and heard oral argument from the parties. *State v. Ruybal*, 408 A.2d 1284, 1287 (Me. 1979). This holding relied, however, on the Maine Rules of Criminal Procedure, which provided that, if a judge resigned after a verdict, another judge could be assigned to perform post-verdict duties, which could include a new trial if necessary in the successor judge's discretion. *See id.* at 1286 n.3 (providing the text of M.R. Crim. P. 25 as it then existed).

[¶27]  In a child protection proceeding, when a successor judge reviews a complete record of the proceedings, including all exhibits and an audio recording or transcript of all testimony, the risk of erroneous deprivation of a parent's interest in the care and custody of a child is not so high that a new trial is required. *See In re Alexander D.*, 1998 ME 207, ¶ 13, 716 A.2d 222. Rather, a successor court has the discretion to determine whether the record available for decision making is sufficient for it to rule on a Rule 52 or Rule 59 motion.

[¶28]  The successor judge's review of the record here was thorough and complete. With the extensive record available, the court did not violate due process or abuse its discretion in determining that the record was sufficient for decision making. All of the evidence was preserved; there was no defect in recording or other barrier to review of the entire proceedings; and the added value of observing live testimony was not so significant on this record that a new trial

was necessary, given the importance of prompt decision making regarding permanency for children.

C.      Best Interests of the Children

[¶29]  The parents finally contend that the termination of their parental rights was not in the children's best interests and that the court should have instead given preference to placement with available relatives—the paternal grandparents—in a permanency guardianship.  They also contend that the findings were impermissibly inconsistent with other findings entered after the placement hearing in August 2014.

[¶30]  A court may terminate parental rights over a parent's opposition only if it finds, by clear and convincing evidence, at least one ground of parental unfitness—a finding that is essentially unchallenged by either parent here—and that termination is in the child's best interest.  *See* 22 M.R.S. § 4055(1)(B) (2015); *In re I.S.*, 2015 ME 100, ¶ 11, 121 A.3d 105.  "Evidence is clear and convincing when the court could reasonably have been persuaded that the required factual findings were proved to be highly probable."  *In re B.P.*, 2015 ME 139, ¶ 16, --- A.3d --- (quotation marks omitted).  In addition to reviewing the court's factual findings regarding a child's best interest, we review the court's "ultimate conclusion regarding the child's best interest for abuse of discretion."  *In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297.

14

### 1. Relative Placement and Permanency Guardianship

[¶31]  In considering the best interests of the children, we are guided by the priorities and policies established by the Legislature.  The Legislature has "[r]ecogniz[ed] that the health and safety of children must be of paramount concern and that the right to family integrity is limited by the right of children to be protected from abuse and neglect and recogniz[ed] also that uncertainty and instability are possible in extended foster home or institutional living."  22 M.R.S. § 4003 (2015).  The Legislature has therefore expressed an intent that, in applying the chapter governing child protection, courts "[p]lace children who are taken from the custody of their parents with an adult relative when possible," *id.* § 4003(3-A), and "[p]romote the early establishment of permanent plans for the care and custody of children who cannot be returned to their family," *id.* § 4003(4).  The Legislature has directed that, when a relative has requested placement of the child, courts "make placement with a relative a priority for consideration . . . if that placement is in the best interests of the child and consistent with section 4003."  22 M.R.S. § 4005-E(2) (2015).  These statutes, taken in conjunction with section 4055(1)(B)(2)(a), provide for relative placement—or kinship care—where that placement can be accomplished without harm to the child and would be in the child's best interests.

[¶32]   In the case before us, we have been asked to review whether, in determining the children's best interests, the court should have denied the petition to terminate parental rights and instead favored kinship placement with the grandparents as permanency guardians. *See id.* § 4038-C.  For a relative to become a permanency guardian, the evidence must demonstrate that the placement will not jeopardize the child's health or safety, *see id.* § 4003, that the placement is in the child's best interest, *see id.* § 4005-E(2), and that the criteria for appointment as a permanency guardian have been met, *see id.* § 4038-C(1).  To be appointed as a permanency guardian, the evidence must show that the prospective permanency guardian

> **A.** Has the ability to provide a safe home for the child;
>
> **B.** Has a close emotional bond with the child and that the child has a close emotional bond with the prospective permanency guardian;
>
> **C.** Is willing and able to make an informed, long-term commitment to the child;
>
> **D.** Has the skills to care for the child; and
>
> **E.** Has submitted to having fingerprints taken for the purposes of a national criminal history record check.

*Id.* § 4038-C(1).

[¶33]   Here, the court found that there was substantial evidence of a risk of harm to the children if they were placed with their grandparents because the

grandparents failed to understand the effect of their own behavior and marital discord on the children and did not appreciate the risks to the children created by the grandmother's suicide attempts and mental health issues. The court further found that the children would be at risk of harm with their grandparents because the grandparents were unable to set and maintain effective boundaries to prevent the mother's difficulties from causing serious emotional disruption in the home.

[¶34] Given the court's findings, all of which have evidentiary support, the court did not abuse its discretion in determining that adoption—not placement with the grandparents in a permanency guardianship—is in these young children's best interests. Notwithstanding the close emotional bond between the children and the grandparents, the evidence supports the court's finding and determination that the grandparents lack the skills and ability to maintain a safe home and adhere to a long-term commitment to the girls in the face of multiple challenges arising from the grandmother's mental health, discord in the grandparents' marriage, and the foreseeable exertion of parental pressure. *See id.* § 4038-C(1)(A)-(D). The court appropriately pursued the statutory mandate that it "[p]romote the early establishment of permanent plans for the care and custody of children" when they

cannot be returned to their parents' care by favoring the stability and permanency that adoption can afford these girls. *Id.* § 4003(4).[5]

2.      Inconsistency with Earlier Placement Findings

[¶35]  The mother and father both argue that the court's termination order is impermissibly inconsistent with the findings reached in the August 2014 placement order.  Because additional evidence was presented after the August 2014 hearing dates, however, including evidence that the children were developing a relationship with a potential adoptive parent, the court acted well within its discretion in entering findings that differed from its earlier findings.  The record supports the court's findings that one final transition is in the children's best interests and that a move to the grandparents' home presents an unacceptable risk of depriving the children of that finality.  We affirm the court's exercise of discretion based on these supported factual findings.  *See In re Thomas H.*, 2005 ME 123, ¶ 16, 889 A.2d 297.

The entry is:

Judgment affirmed.

---

[5]  The father's reliance on the dissenting opinion in *In re Michaela C.*, 2002 ME 159, ¶¶ 32-40, 809 A.2d 1245 (Saufley, C.J., dissenting), is misplaced because there, unlike here, the child was to be placed with her grandmother whether or not parental rights were terminated, *see In re Michaela C.*, 2002 ME 159, ¶¶ 11, 31, 809 A.2d 1245.

18

**On the briefs:**

Chelsea S. Peters, Esq., Auburn, for appellant mother

Jeffrey S. Dolley, Esq., Dolley Law Firm, LLC, Lewiston, for appellant father

Janet T. Mills, Attorney General, and Courtney Goodwin, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Lewiston District Court docket number PC-2012-85
FOR CLERK REFERENCE ONLY