MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:       2016 ME 58
Docket:         Oxf-15-373
Submitted
 On Briefs:     January 28, 2016
Decided:        April 14, 2016

Panel:          ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

## BENJAMIN L. YAP

v.

## ALYSSA L. VINTON

PER CURIAM

[¶1]   Benjamin L. Yap appeals from a judgment of the District Court (South Paris, *L. Walker, J.*) granting Alyssa L. Vinton shared parental rights and responsibilities of their child.   On appeal, Yap contends that the court erred by adopting Vinton's proposed order verbatim and not exercising independent judgment.   We agree and vacate the judgment and remand for additional findings of fact and conclusions of law.

## I.  BACKGROUND

[¶2]  On August 14, 2014, Yap filed a complaint for protection from abuse against Vinton on behalf of himself and their child.   The complaint stemmed principally from an incident that had occurred earlier that day, in which Vinton went to Yap's apartment, where the child was staying, and angrily banged on the

front door, shattering the window. A temporary protection order was granted the same day, awarding Yap temporary sole parental rights and responsibilities. On August 19, 2014, Yap filed a complaint for a determination of parental rights and responsibilities.

[¶3] On August 25, 2014, consistent with an agreement by the parties, the court issued a protection from abuse order pursuant to 19-A M.R.S. § 4007 (2015). The order provided shared parental rights and responsibilities, awarded Yap primary residence of the child, and specified the days and times when Vinton could have primary responsibility for the child.

[¶4] The court issued an amended protection from abuse order on October 1, 2014, and on November 6, 2014, the court issued a second amended protection from abuse order, mandating that Vinton undergo a substance abuse evaluation and drug and alcohol testing. On June 4, 2015, the court held a hearing on the complaint for a determination of parental rights and responsibilities.

[¶5] At the hearing, Yap testified that he and Vinton had dated intermittently since 2008. After a series of breakups and reunions and moving between Connecticut and Maine, in or about March 2013 Vinton moved into an apartment in the same building as Yap in West Paris, Maine. Vinton and Yap generally shared responsibility for their child, until sometime in late 2013 when Yap began to suspect that Vinton had developed a drug habit. Yap described how

Vinton would disappear for days and would often come into his home in the middle of the night to sleep. In early 2014, Yap found, on multiple occasions, what he suspected was cocaine among Vinton's belongings.

[¶6] With regard to Vinton's alleged drug habit, two of Vinton's drug and alcohol counselors testified at the hearing that, based on Vinton's self-reported answers concerning her past alcohol and drug habits, she had no substance abuse problems. These negative findings were based, at least in part, on Vinton's report that she had not used drugs in over ten years. The court also received the guardian ad litem's report that noted that Vinton had successfully completed three drug screens during the pendency of the case, and ultimately recommended shared parental rights and responsibilities.

[¶7] The drug counselors' opinions and conclusions, however, were seriously undermined when Vinton testified at the hearing that she had misrepresented her previous drug use because she was scared to lose her child and had, in fact, used cocaine between twelve and fifteen months prior to the hearing. Vinton testified that she does not do drugs "very often," but that she "like[s] to party."

[¶8] Yap also testified that on April 24, 2014, Vinton had broken into, robbed, and vandalized his apartment, and, in addition, placed old pictures of the two in Yap's living room. Yap contended that Vinton admitted that she broke into

4

his apartment, but when Vinton was asked about this incident at the hearing she asserted her Fifth Amendment rights. Yap also described receiving multiple death threats from Vinton. Vinton confirmed that she had made death threats but she denied any actual intent to physically harm either Yap or the child. Yap also alleged that in August 2014, Vinton broke Yap's window by banging on the door after she had "lost [her] temper," for which Vinton entered a guilty plea to a charge of criminal mischief. Notwithstanding their turbulent history, Yap stated that he believed Vinton should have one overnight per week with the child and shared parental rights and responsibilities. At the conclusion of the hearing, the court took the matter under advisement without announcing a decision or findings from the bench. Vinton submitted a proposed order for the court's consideration.

[¶9] On June 29, 2015, the court adopted, in its entirety and with the one change noted below, Vinton's proposed parental rights order and findings of fact and conclusions of law, granting her at least three overnight visits with the child per week and shared parental rights and responsibilities. The only modification the court made to Vinton's proposed order and findings was to obscure the word "PROPOSED" in the title of the order with white-out-style correction tape or fluid so the remaining visible portion of the text read: DEFENDANT'S ORDER OF PARENTAL RIGHTS AND RESPONSIBILITIES. Yap appealed, arguing,

inter alia, that the judge failed to exercise independent judgment by adopting the language of Vinton's proposed order verbatim.[1]

## II. DISCUSSION

[¶10] "[A] trial court's verbatim adoption of findings or orders proposed by one party in a case is disfavored, as such an approach suggests that the court has not carefully reviewed the evidence or applied its independent judgment in making its findings and conclusions." *Estate of Colburn*, 2006 ME 125, ¶ 11, 909 A.2d 214 (quotation marks omitted). "[A] key question on review, when draft orders are adopted without change or with little material change, will be whether the findings and order reflect the application of judgment by the court and not simply one of the parties." *Id.* (alteration in original) (quotation marks omitted). *Id.* "If the proposed findings are argumentative or insufficiently objective because they are drafted by a party, a judgment adopting those findings may be defective." *In re C.P.*, 2016 ME 18, ¶ 19, --- A.3d ---.

[¶11] We recently addressed a parent's contention that a court's verbatim adoption of a proposed order did not reflect the court's independent judgment. In *In re C.P.*, the court elicited two proposed orders from an assistant attorney

---

[1] We note that Yap failed to file a motion for further findings or for reconsideration, which would have afforded the court an opportunity to address his concerns prior to the filing of an appeal. For future guidance, we announce that appeals challenging orders based upon an alleged lack of independent judgment by a judge should be preceded by an appropriate motion that identifies the issue and allows the trial judge an opportunity to address those concerns prior to appellate review.

6

general—one granting a termination of parental rights petition and another denying the petition—without affording either parents' counsel an opportunity to submit proposals. *Id.* ¶¶ 9, 11. The court adopted without change the proposed order terminating the parental rights of both parents, and "[t]he judge who issued the order left the bench through a planned resignation, effective the next day." *Id.* ¶ 10. The father subsequently moved for amended or additional findings, and the court, through a successor judge, granted the motion. *Id.* ¶¶ 11-12. The successor judge thoroughly reviewed and carefully analyzed the entire record resulting in extensive additional findings, and ultimately affirmed the decision to terminate both parents' parental rights. *Id.* ¶¶ 12, 23.

[¶12] The parents appealed, challenging the initial entry of a proposed order verbatim as violative of their procedural due process rights. *Id.* ¶¶ 16-17. We held that, although the process was not ideal, the order was nonetheless reflective of the court's independent judgment for several reasons. *Id.* ¶ 22. First, the focal point of the trial was not parental unfitness given that the mother failed to even attend the trial and the father conceded his unfitness; rather, the primary focus was whether the children would be placed in a permanency guardianship with the children's grandparents, as opposed to being freed for adoption as a result of an order terminating the parental rights of the children's parents. *Id.* ¶¶ 1, 22. Second, we concluded that "the findings ultimately entered by the court, even if drafted by one

party, [were] fully supported in the record." *Id.* ¶ 22. Finally, any potential prejudice that could have arisen was minimized by the successor judge's careful and thorough review of the record memorialized by extensive, additional findings. *Id.* ¶¶ 12, 23.

[¶13] The factors that led us to conclude that the court in *In re C.P.* had exercised its independent judgment, however, are absent from this case. Most notably, unlike in *In re C.P.*, a number of the court's findings here resemble a party's advocacy and are not clearly supported by evidence in the record. For instance, in finding #8, the court stated that

> [Yap] testified that in April 2014, [Vinton] "broke into his house." The [c]ourt notes at the time of the alleged "break-in" the parties lived in the same building and regularly were in each other's apartments, both with permission and without. Additionally, the alleged "break-in" occurred in the context of their relationship ending. Regardless of the [*sic*] whether this occurred or occurred in the manner [Yap] testified, it is unclear whether [the child] was present for this incident. In any event, this incident would only be relevant to the [c]ourt's decision if [Vinton] were unavailable for some period of time to take care of the child. If the child was in her care at the time of the alleged incident, he was asleep just upstairs.

[¶14] Contrary to the court's findings, there is no clear evidence in the record that Yap and Vinton were in and out of each other's apartments at will; and even if Vinton was lawfully in Yap's apartment, that would not justify the alleged acts of vandalism and robbery that Yap contended occurred. To that end, the court makes no mention of either accepting or rejecting Yap's contentions that some of

8

his possessions were missing or broken, nor does it draw any inference from Vinton's invocation of her Fifth Amendment rights when she was asked about that incident at the hearing. Additionally, with regard to the relevance of the incident, it is unclear how the context of the relationship ending has any bearing on the incident, and alleged criminal conduct would not "only be relevant" if it resulted in Vinton's "unavailab[ility]"—presumably meaning an incarceration.

[¶15]   Another finding that is not adequately supported by the record is finding #18 which stated, in pertinent part, that "[t]his court agrees with the [GAL] and [Vinton's] counselor that [Yap] has used the current contact schedule as a tool to assert power and control over [Vinton] and her time with [the child]." Although the GAL testified that Vinton has "been marginalized in her role" as a result of the protection from abuse order, the GAL did not state that Yap had used the contact schedule—which Vinton agreed to—as "a tool to assert power and control." The court fails to identify, furthermore, how Yap could have been more compromising in light of the agreed-upon contact schedule outlined in the second amended protection from abuse order, which provides the following directive: "Warning to [Vinton]: as long as this order is in effect, you must obey it. No one, including [Yap], can give you permission to violate the provisions of this order."[2]

---

[2] The all-uppercase typeface is omitted.

[¶16]   A number of the trial court's findings either resemble a party's advocacy or are not clearly supported in the record, and the court's error in this respect is compounded by the failure to make any additional, independent findings. As a result, we cannot conclude that the findings were the result of careful judicial deliberation and the exercise of independent judgment.

The entry is:

> Judgment vacated.   Remanded for additional findings of fact and conclusions of law.

---

**On the briefs:**

Matthew Govan, Esq., Govan Law Office, P.A., Portland, for appellant Benjamin L. Yap

Alyssa L. Vinton did not file a brief

South Paris District Court docket number FM-2014-105
FOR CLERK REFERENCE ONLY