MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2017 ME 66
Docket:        Cum-16-286
Submitted
  On Briefs:   January 19, 2017
Decided:       April 6, 2017

Panel:         SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE CALEB M. et al.

SAUFLEY, C.J.

[¶1]  More than two and a half years after Caleb M. and Ayden R. were first removed from their mother's care because of her substance abuse and consequent neglect, the mother's parental rights to the children were terminated by a judgment of the District Court (Portland, *Eggert, J.*).  The mother appeals, arguing that the court did not independently exercise its judicial function, that the court improperly relied on the reports of a guardian ad litem (GAL), and that the evidence was insufficient to support the termination of her parental rights.  We affirm the judgment.

## I.  BACKGROUND

[¶2]  On November 7, 2013, the Department sought child protection orders on behalf of Caleb M. and Ayden R. due to allegations of neglect caused

2

by the mother's substance abuse.[1]  By agreement, on March 3, 2014, the court (*Goranites, J.*) made a finding of jeopardy against the mother as to each child, based on the mother's exposure of the children to drug use, criminal activity, and unsafe individuals; and her lack of appropriate housing.  While these proceedings were pending, the mother gave birth to a daughter who is the subject of a separate child protection proceeding.

[¶3] Judicial reviews were held on March 3 and September 3, 2014; March 3 and September 9, 2015; and March 8, 2016, and orders were entered by agreement after each of these reviews.  Reports of a GAL were admitted in evidence at each of the judicial reviews.  The September 9, 2015, and March 8, 2016, judicial reviews were presided over by the same judge (*Eggert, J.*) who ultimately presided over the termination hearing.

[¶4] On December 14, 2015, the Department filed a petition to terminate the mother's parental rights to Caleb, and on February 18, 2016, the Department filed a petition to terminate her parental rights to Ayden.  In both petitions, the Department alleged that the mother had inconsistently participated in mental health and substance abuse services, and had continued

---

[1]  At the time the Department filed its petition, the children had been placed with their maternal aunt since September 2013, pursuant to a safety plan.

to permit unsafe individuals, including the three fathers of her children, to be present around the children.

[¶5]  The court conducted a hearing on the petitions on May 12 and 16, 2016, during which the court heard testimony from the mother, the mother's and the children's providers, Department caseworkers, and the GAL.  At the conclusion of the hearing, the court sought proposed orders from both the mother and the Department.  In a judgment entered on June 2, 2016, in which the court largely adopted the Department's proposed order, the court terminated the mother's parental rights to both children.[2]  In a footnote, the court noted that it had used the Department's proposed order "extensively" because "the Department's proposed findings align quite closely with the court's view of the evidence."

[¶6]  In its judgment, the court made the following supported findings by clear and convincing evidence.  *See In re Hannah S.*, 2016 ME 32, ¶ 3, 133 A.3d 590.  The mother has had a substance abuse problem for several years.  She participated in various treatment programs including outpatient, intensive outpatient, and residential programs.  Her compliance with these treatment

---

[2]  The fathers' parental rights were terminated by judgments entered on May 26, 2016.  Neither father appealed the termination of his parental rights.

programs was inconsistent, and she was discharged from one program for her failure to make progress. Needles were found in her room at one of the treatment programs.

[¶7] The mother relapsed on several occasions, and recent drug tests performed by her doctor showed elevated levels of her prescribed medications and indications that she was also using nonprescribed medications. In December 2015, the mother admitted that she overused her prescribed Suboxone. Only two months before her parental rights were terminated, a Department caseworker found needles in her bedside table.

[¶8] The mother permitted several "unsafe men" to be present with the children. In early 2016, a Department caseworker making an unannounced visit to the mother's home discovered Ayden's father hiding in a closet despite the mother's denial that he was there. Ayden's father was then arrested on outstanding warrants. In April 2016, a caseworker visiting the mother's home noticed her infant daughter's father leaving. When the caseworker asked the mother about needles that were found in a nightstand, she blamed the daughter's father and his friend.

[¶9] Caleb was afraid of returning to live with his mother because he worried that he would be the one who would have had to care for Ayden and

their sister. He worried about having enough food to eat, and he regularly checked the cupboards in his foster home to see that there was enough food. Caleb has been diagnosed with autism spectrum disorder, and is on the waiting list for more intensive in-home support, as well as trauma-focused cognitive behavioral therapy. Caleb's therapist believes that returning Caleb to his mother's care would "re-traumatize" him.

[¶10] The mother did not consistently attend visits with her children. The visit supervisor testified that Caleb seemed to "r[u]n the show" during visits with the mother. When the mother misses visits with Caleb, he becomes very upset. The Department intends to seek an adoptive placement for Caleb.

[¶11] Ayden has been diagnosed with ADHD. In his foster placement, Ayden thrived on structure and routine. In late 2015, the mother was given the opportunity to have Ayden with her again. He was returned to his mother's care in a trial placement but had to be removed again in early 2016.

[¶12] Supporting the decision to remove Ayden, the GAL testified that during the trial placement, Ayden's "level of care suffered enormously when he was with his mother." According to the GAL, he was "falling asleep in class," "behind academically," and "hungry." "His mother was not picking . . . him up

reliably," and "he was having hygiene issues." The Department plans to seek an adoptive placement for Ayden.

[¶13] The court ultimately found that, despite the mother's access to services for more than two years, the mother could not rebut the presumption of unfitness that arose because of her chronic substance abuse. *See* 22 M.R.S. § 4055(1-A)(C) (2016). At the time of the hearing, the mother was unable to care for the children, and she may never be able to do so. Caleb and Ayden "need permanency" after having lived in a state of "limbo" for nearly three years. Both children "deserve the permanency of adoption." The court found that adoption is in the best interest of each child. *See* 22 M.R.S. § 4055(1)(B)(2)(a) (2016). The mother timely appealed. *See* 22 M.R.S. § 4006 (2016); M.R. App. P. 2(b)(3).

## II. DISCUSSION

[¶14] The mother contends on appeal that the court failed to exercise its independent judgment in terminating her parental rights and erred in considering GAL reports, and that the evidence was insufficient to support the court's decision to terminate her parental rights.

A.      Trial Court's Independent Judgment

[¶15]   The mother first argues that the court did not exercise its independent judgment in terminating her parental rights because the court adopted the Department's proposed order with minimal changes.  We note that the mother failed to file a motion for further findings or for reconsideration before raising this issue in her appeal.  As we have recently noted, "appeals challenging orders based upon an alleged lack of independent judgment by a judge should be preceded by an appropriate motion that identifies the issue and allows the trial judge an opportunity to address those concerns prior to appellate review." *Yap v. Vinton*, 2016 ME 58, ¶ 9 n.1, 137 A.3d 194.  We now clarify the importance of such a motion in the context of a child protection proceeding.  In order to avoid the delay inherent in a later challenge to the court's order that could have been expeditiously addressed by the trial court, we will no longer entertain a challenge to the trial court's independent judgment based on the court's adoption of a party's proposed order, absent a

parent's motion for further or clarified findings pursuant to Maine Rule of Civil Procedure 52(b).[3]

[¶16]  Because we have not previously announced this requirement, we proceed to consider the merits of the mother's argument.  "In reviewing whether the trial court performed its judicial function, we must determine whether the findings adequately indicate the factual basis [for] the ultimate conclusion." *In re Sabrina M.*, 460 A.2d 1009, 1013 (Me. 1983).  "If the proposed findings are argumentative or insufficiently objective because they are drafted by a party, a judgment adopting those findings may be defective."  *In re C.P.*, 2016 ME 18, ¶ 19, 132 A.3d 174.

[¶17]  Although "a verbatim adoption of findings proposed by one party . . . is disfavored, as such an approach suggests that the court has not applied its independent judgment in making its findings and conclusions," draft findings proposed by either side can aid the court's fact-finding. *In re Marpheen C.*, 2002 ME 170, ¶ 7, 812 A.2d 972.  "[W]hen draft orders are adopted without change or with little material change," and the court's findings have not changed as a

---

[3] Such a motion terminates the running of the time for filing an appeal, with the time for appeal then commencing to run from the entry of the ruling on that motion.  M.R. App. P. 2(b)(3).  Therefore, the Rule 52(b) motion should *not* be accompanied by a notice of appeal and should be acted on expeditiously.

result of a properly filed motion for further or clarified findings pursuant to Rule 52(b), the key question for our review "will be whether the findings and order reflect the application of judgment by the court and not simply one of the parties." *See Yap*, 2016 ME 58, ¶ 10, 137 A.3d 194.

[¶18] It is evident that the court's judgment in this matter resulted from the court's careful application of its own independent judgment. The judgment is not a verbatim adoption of the Department's proposed order. The court specifically acknowledged that it made extensive use of the proposed order because it articulated the court's view of the case. Further, the court made substantive additions to five paragraphs and made other changes to reflect that the court did not believe parts of the mother's testimony. The court's judgment was the product of the proper exercise of its judicial function and it was not defective. *See id.*; *In re Marpheen C.*, 2002 ME 170, ¶¶ 7-8, 812 A.2d 972.

B. GAL Reports

[¶19] The mother next argues that her due process rights were violated when the court took judicial notice of all of the GAL reports in the court's file and then relied on those reports in its judgment. Specifically, she contends that the reports were largely hearsay and that she had no opportunity for cross-examination or rebuttal of the information in the reports. The mother

further asserts that the court made six factual findings that were clearly erroneous because they were supported only by GAL reports that she insists the court was not permitted to consider.

1.     Admission in Evidence

[¶20]  The admission of GAL reports in evidence is specifically authorized by statute.  22 M.R.S. § 4005(1)(D) (2016); *see also* M.R. Evid. 802 (providing that hearsay is not inadmissible if a statute provides for its admissibility); *In re Chelsea C.*, 2005 ME 105, ¶ 10, 884 A.2d 97 ("[T]here is no question that the Legislature may authorize court consideration of the contents of guardian ad litem reports as an exception to the hearsay rule.").  Thus, the admission of GAL reports at earlier stages in the proceedings comported with the law and allowed the court, at each stage, to rely on the report to the extent it deemed appropriate in light of all of the evidence presented or the agreement of the parties. *See In re Chelsea C.*, 2005 ME 105, ¶ 16, 884 A.2d 97.

[¶21]  Nor did the admission of those reports at the judicial reviews violate the mother's due process rights.  "[D]ue process requires: notice of the issues, an opportunity to be heard, the right to introduce evidence and present witnesses, the right to respond to claims and evidence, and an impartial fact-finder." *Id.*  Judicial reviews provide an opportunity for an evidentiary

hearing. 22 M.R.S. § 4038(5) (2016). At those reviews, the mother had notice of the hearing, court-appointed counsel, and an opportunity to challenge any evidence offered through the GAL report or otherwise.

[¶22] The mother agreed to the orders entered at the judicial reviews, all of which stated that the GAL reports were admitted in evidence, and there is no indication that she was denied the opportunity for a hearing that provided each of the essentials of due process. *See In re Chelsea C.*, 2005 ME 105, ¶ 16, 884 A.2d 97.

2.  Termination Court's Consideration of GAL Reports

[¶23] The remaining question is whether the court that held the termination hearing could consider evidence contained only in previously admitted GAL reports. When a GAL report was admitted in evidence in a prior stage of the proceeding, the court conducting a hearing on a later judicial review or termination petition can consider and rely on that report only if it was admitted by the same judge in the earlier proceeding. *See In re Scott S.*, 2001 ME 114, ¶ 12, 775 A.2d 1144. "The authority of the trial judge to take judicial notice of matters of record is distinct from the authority of a single judge to consider *evidence presented* in a previous stage of a child protective proceeding when that evidence was presented to the same trial judge." *Id.* "When the trial

judge has actually heard the evidence presented in prior stages of a child protection proceeding, that judge may consider the evidence in the following stages because the process is, in fact, a unified proceeding." *Id.*; *cf. Cabral v. L'Heureux*, 2017 ME 50, ¶¶ 10-11 & n.3, --- A.3d --- (in non-unified proceedings, different rules apply). "When a different trial judge presides at a later stage of the process, that trial judge may not rely on the *evidence* presented to the prior judge . . . ." *In re Scott S.*, 2001 ME 114, ¶ 12, 775 A.2d 1144. The trial judge at the termination proceeding may, however, take judicial notice of the existence of prior orders and judgments and the actions taken by the court. *See* M.R. Evid. 201; *Cabral*, 2017 ME 50, ¶ 11, --- A.3d ---; *see also United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

[¶24] In this matter, the court did not explicitly admit any of the GAL's prior reports in evidence during the termination hearing. Thus, the only prior reports available for the court's potential consideration were those that were admitted in prior proceedings held by the same judge who presided over the termination hearing. *See In re Scott S.*, 2001 ME 114, ¶ 12, 775 A.2d 1144. Specifically, the termination court could consider only those GAL reports that had been admitted during the September 9, 2015, and March 8, 2016, judicial reviews that the same judge had held, along with the GAL's report prepared for

the termination proceeding.[4]  Consequently, of the six factual findings that the mother challenges, four were not supported by the record because they were supported only within GAL reports that this particular judge could not consider.[5]  *See Guardianship of Hailey M.*, 2016 ME 80, ¶ 15, 140 A.3d 478 ("A finding of fact is clearly erroneous if there is no competent evidence in the record to support it . . . .").

[¶25]  We are not, however, required to vacate the trial court's judgment if the court's factual errors are harmless.  *See* M.R. Civ. P. 61.  "In the context of a termination of parental rights proceeding, a preserved error is harmless if it is highly probable that the error did not prejudice the parents or contribute to the result in the case."  *In re M.S.*, 2014 ME 54, ¶ 12, 90 A.3d 443 (quotation marks omitted).

[¶26]  Here, none of the unsupported findings were important in the court's findings regarding the mother's substance abuse or the best interest of each child—the grounds for the court's determination to terminate her

---

[4]  The court did admit the GAL's most recent report for each child, both dated May 2, 2016. Evidence supporting the challenged findings was not contained in either of those reports.

[5]  Specifically, the evidence that could be considered by the court cannot support the court's findings that the mother never had a case manager for housing support, the Department "lost touch" with the mother for a period of time, the mother explained the presence of a bottle of urine in her room at one of the treatment programs by asserting that she had been "too lazy" to get up and use the bathroom, and the mother *never* participated in mental health treatment.

parental rights. As we discuss below, there was ample competent evidence for the court to have found, by clear and convincing evidence, that the presumption of unfitness applied and that termination was in the best interest of each child. Thus, it was highly probable that the erroneous findings did not prejudice the mother or contribute to the court's ultimate determination, and the court's mistaken reliance on certain GAL reports was harmless error. *See id.* Accordingly, we turn to the sufficiency of the evidence supporting the court's judgment. In reviewing the mother's challenge to the sufficiency of the evidence, we disregard the court's unsupported findings.

C.     Sufficiency of the Evidence

[¶27]  Before a court may terminate a parent's parental rights, the court must find, "by clear and convincing evidence, at least one ground of parental unfitness . . . and that termination is in the child's best interest." *In re C.P.*, 2016 ME 18, ¶ 30, 132 A.3d 174; *see also* 22 M.R.S. § 4055(1)(B)(2) (2016). "Evidence is clear and convincing when the court could reasonably have been persuaded that the required factual findings were proved to be highly probable." *In re C.P.*, 2016 ME 18, ¶ 30, 132 A.3d 174 (quotation marks omitted). "The weight and credibility of the testimony and other evidence, including GAL reports, is for the fact-finder's determination." *In re Cameron B.*, 2017 ME 18, ¶ 10, --- A.3d ---.

1. Unfitness

[¶28] The trial court may presume that a parent is unfit when

> [t]he child has been placed in the legal custody or care of the department, the parent has a chronic substance abuse problem, and the parent's prognosis indicates that the child will not be able to return to the custody of the parent within a reasonable period of time, considering the child's age and the need for a permanent home. The fact that a parent has been unable to provide safe care of a child for a period of 9 months due to substance abuse constitutes a chronic substance abuse problem.

22 M.R.S. § 4055(1-A)(C); *see also* 22 M.R.S. § 4055(1)(B)(2)(b)(i). The mother contends that the statute *defines* "chronic substance abuse problem" to mean that "a parent has been unable to provide safe care of a child for a period of 9 months due to substance abuse." Accordingly, the mother argues, because she cared for her daughter after the daughter was born, and because Ayden was placed with her on a trial basis until January 2016, she does not have a chronic substance abuse problem within the meaning of the statute, and therefore the court erred in applying the presumption of unfitness provided by 22 M.R.S. § 4055(1-A)(C). We review the interpretation of a statute de novo. *In re Jacob C.*, 2009 ME 10, ¶ 9, 965 A.2d 47. "When a statute is not ambiguous, its plain meaning will govern." *Id.*

[¶29] Contrary to the mother's contention, the plain meaning of the statutory language that a parent's inability to provide safe care of a child for

16

nine months "constitutes" a chronic substance abuse problem does not mean that a "chronic substance abuse problem" is limited to only those circumstances.

[¶30]  It is imperative, however, that we not use the broad brush of "chronic substance abuse" to enable the continued separation of children from their parents when the children's health and safety do not require it.  In a time when far too many young parents struggle with drug and alcohol addictions, every effort must be made to help those parents find sobriety and return to their parental roles.  To do otherwise risks the separation of children from their birth families when it could have been avoided.  Thus, a trial court must carefully consider whether the substance abuse of the parent is truly "chronic."

[¶31]  Sadly for the children in the matter before us, there was ample competent evidence for the court to have found, by clear and convincing evidence, that the mother has engaged in chronic substance abuse; that she has been provided many services, including multiple opportunities to work toward recovery and sobriety; that she was even provided a trial placement of Ayden and could not keep him safe; and that Caleb and Ayden will not be able to be returned to her custody within a reasonable time.

[¶32]  The mother's substance abuse made her unable to care for Caleb and Ayden for a period that far exceeds nine months.  At the time of the final hearing in this matter, Caleb and Ayden had been in the Department's legal custody for more than two years, during which time she made little progress in recovering from her addiction.  Despite opportunities, she remained unable to provide safe care for her children, as demonstrated by the removal of her daughter from her care, and the removal of Ayden from her care—for the second time—following the trial placement.  The court did not err in finding that the presumption of unfitness applied and that the mother failed to rebut it.

2.  Best Interest of Each Child

[¶33]  The mother further asserts that the court erred or abused its discretion in determining that the termination of her parental rights was in the best interest of each child.[6]  We review the court's factual findings for clear error and its ultimate conclusion regarding the best interest determination "for an abuse of discretion, viewing the facts, and the weight to be given them,

---

[6]  The mother argues, citing our opinion in *In re Thomas H.*, 2005 ME 123, ¶ 32, 889 A.2d 297, that the court was required to find a "compelling reason" to terminate her parental rights because Caleb and Ayden were doing well in foster care and there were no identified adoptive placements.  Contrary to the mother's argument, in *In re Thomas H.*, we held that the court was required to find a compelling reason *not* to terminate parental rights when the children would be "consigned to the instability and impermanence of long-term foster care."  *Id.* ¶ 35.  The court was not required to find a compelling reason to terminate the mother's parental rights in this matter.  *See id.*

through the trial court's lens." *In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260 (quotation marks omitted). "The District Court's judgment on the issue of best interest is entitled to substantial deference because that court is able to directly evaluate the testimony of the witnesses." *In re Michaela C.*, 2002 ME 159, ¶ 27, 809 A.2d 1245.

[¶34] Here, Caleb and Ayden were first removed from their mother's care nearly three years before the hearing and had been in the Department's custody for more than two years. During that time, the mother had made no substantial progress in recovering from her addiction, and she continued to allow unsafe individuals to be around her children. The court found that Caleb and Ayden need the permanency of adoption and, because of their young ages and the length of time they have already spent in foster care, they cannot wait any longer for their mother to be able to care for them. These findings are supported by the evidence in the record. The court did not commit clear error or abuse its discretion in determining that termination was in each child's best interest. *See In re M.B.*, 2013 ME 46, ¶ 37, 65 A.3d 1260.

The entry is:

Judgment affirmed.

Virginia Lee Holt, Esq., Holt Family Law, Saco, for appellant mother

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket numbers PC-2013-99 and -100
FOR CLERK REFERENCE ONLY