MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 96
Docket:       Cum-16-508
Submitted
 On Briefs:   April 27, 2017
Decided:      May 16, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

IN RE KAYLEIGH P. et al.


PER CURIAM

[¶1]  The father of Kayleigh P. and Mikaela P. appeals from a judgment of the District Court (Portland, *Powers, J.*) terminating his parental rights to the children pursuant to 22 M.R.S. § 4055(1)(B)(2) (2016).  Because, contrary to the father's contention, the evidence supports the court's factual findings and the court did not abuse its discretion in determining that termination is in the children's best interest, we affirm the judgment.

[¶2]  The court found by clear and convincing evidence that the father was unable to protect the children from jeopardy or to take responsibility for them within a time reasonably calculated to meet their needs, and that it was in the children's best interest for his parental rights to be terminated.  22 M.R.S. § 4055(1)(B)(2)(a), (b)(i)-(ii); *see In re Caleb M.*, 2017 ME 66, ¶ 27, --- A.3d ---.  The court made its determination based on the following findings of fact that are supported by evidence in the record.  *See In re Logan M.*, 2017 ME 23, ¶ 3,

2

155 A.3d 430 (stating that factual findings supporting the trial court's unfitness determination are reviewed for clear error); *In re Caleb M.*, 2017 ME 66, ¶ 33, --- A.3d --- (stating that factual findings supporting the trial court's best interest determination are reviewed for clear error).

[¶3] In October 2014, after the Department of Health and Human Services obtained a preliminary child protection order granting it custody of the children upon discovering that they had been neglected and "generally mistreated" while in the care of their mother, the Department contacted the father and his partner, who herself has a serious child protection history, concerning whether the father could care for the children. The father, who had not seen the children since January 2014, was unable to do so. The Department placed the children with a foster family, where they remain more than two years later. After the Department took custody of the children, the father had visits with them that were always supervised. Based on the testimony of visit supervisors, the court found that the father "does an average job [of] parenting . . . during these two hour visits," and that he was "not particularly empathetic" toward the children.

[¶4] When a February 2016 termination petition was withdrawn, giving the father extra time to seek reunification, the Department developed an

updated, detailed reunification plan. After that plan was instituted, the father's attendance at the girls' medical appointments became worse. He did not understand their medical needs and diagnoses, or know their therapists' names. He made no progress in meeting the reunification plan's requirement that he utilize a parenting coach. The plan also required the father to get mental health treatment for issues that included an anger problem and depression. He felt no need for counseling or dealing with his anger issues, however, even though his counselor testified that he still had depression and unresolved PTSD and ADHD diagnoses. The counselor acknowledged that the focus of his work was on the father's personal issues, not on his parenting skills.

[¶5] The court found that the Department was justifiably concerned that the father did not act as his children's primary parent, instead relying on his partner to provide most of the care for his "challenging" girls, and that a separation between the father and his partner, which had occurred at least once during their relationship, would endanger the girls' well-being. The court also found that the children—although they still have significant emotional and medical needs—are doing well, in contrast to the "out of control and destructive" behavior that they exhibited when they first entered foster care,

and that they have benefitted from the long-term counseling and frequent in-home services that they have received.

[¶6]  The GAL recommended termination.  The court found persuasive the GAL's opinion that (1) the father cannot safely care for the children given their "high level of needs," (2) the children do well where they reside and need permanency, and (3) that need could be met by adoption.  *See In re Caleb M.*, 2017 ME 66, ¶ 27, --- A.3d --- ("The weight and credibility of the testimony and other evidence, including GAL reports, is for the fact-finder's determination." (quotation marks omitted)).

[¶7]  Weighing all of the evidence, the court found that "[t]here is no evidence that the . . . unfitness issue will resolve anytime soon enough to allow the father to protect and care for the girls."  Given the court's supported factual findings, and giving its judgment the "substantial deference" to which it is entitled, *id.* ¶ 33 (quotation marks omitted), the court did not err in finding "by clear and convincing evidence[] at least one ground of parental unfitness," *id.* ¶ 27 (quotation marks omitted), and did not abuse its discretion in determining that termination of the father's parental rights was in the children's best interest, *see id.* ¶ 34.

The entry is:

Judgment affirmed.

---

Lauren Wille, Esq., DeGrinney Law Offices, Portland, for appellant Father

Janet T. Mills, Attorney General, and Meghan Szylvian, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Health and Human Services

Portland District Court docket number PC-2014-91
FOR CLERK REFERENCE ONLY