MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2018 ME 11
Docket:      Ken-17-363
Submitted
  On Briefs:  January 11, 2018
Decided:    January 23, 2018

Panel:       ALEXANDER, MEAD, GORMAN, JABAR, and HUMPHREY, JJ.


IN RE ZARIANNA C. et al.


PER CURIAM

[¶1]  The father of Zarianna C., Zariyah C., and Zaylah C. appeals from a judgment of the District Court (Waterville, *Stanfill, J.*) terminating his parental rights to the children pursuant to 22 M.R.S. § 4055(1)(A)(1)(a) and (B)(2)(a), (b)(i)-(ii) (2017).[1]  After reviewing the record, we conclude that the evidence supports the court's finding of parental unfitness and its discretionary determination that termination is in the children's best interests.  Accordingly, we affirm the judgment.

[¶2]  Based on competent evidence in the record, the court found by clear and convincing evidence that the father (1) is unwilling or unable to protect the children from jeopardy within a time reasonably calculated to meet their needs and (2) is unwilling or unable to take responsibility for them within that time frame.  *See* 22 M.R.S. § 4055(1)(B)(2)(b)(i)-(ii).  The court

---

[1]  The mother consented to a termination of her parental rights and is not a party to this appeal.

also found that termination of the father's parental rights is in the children's best interests. *See* 22 M.R.S. § 4055(1)(B)(2)(a). We review the factual findings supporting the unfitness determination for clear error, *see In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430, and apply the same standard to the factual findings supporting the best interest determination, although we review the court's ultimate conclusion that termination is in the children's best interests "for an abuse of discretion, viewing the facts, and the weight to be given them, through the trial court's lens," and giving the court's judgment "substantial deference," *In re Caleb M.*, 2017 ME 66, ¶ 33, 159 A.3d 345 (quotation marks omitted).

[¶3] The court based its determination on the following findings of fact:

This case began in November 2015, but the family's involvement with the Department started long before that. The first case was filed in December 2011 and involved only Zarianna because the other two girls had not yet been born. [T]he case was dismissed . . . after some two years with successful reunification with the mother. The second case involved both Zarianna and Zariyah, and was filed August 22, 2014, approximate[ly] 8 months later. That case was dismissed after about 14 months, in October 2015. The dismissal was ordered after entry of a Parental Rights Judgment which provided for the girls to live with their mother and have supervised visits with their father. [The father] was incarcerated at the time.

This case was filed November 6, 2015, only one month after the last case was dismissed. [The current foster parents] have been the foster placement for all three cases. At this point,

Zarianna has lived with them almost 5 years of her life and Zariyah for almost 3 years of her life. Zaylah has lived with the [foster parents] since she was 9 months old and she is now over two years old. In short, all three girls have lived with the [foster parents] the majority of their short lives.

The Jeopardy Order in this case found that the girls were in jeopardy based on [the father]'s "past extensive and severe substance abuse issues; past perpetration of domestic violence, continued criminal activity and incarcerations; and recent incarceration that prevents [the father] from being a caregiver to the children." [The father] has never been the primary caregiver for the children, and did not engage in substantial reunification services or efforts during either of the first two cases.

After years of failing to appropriately take care of the girls, [the father] began to try to make changes in his life. He has felony drug convictions from 2009 and 2010, but not since then. He has three OUI convictions, in 2009, 2013, and 2014. He went through Drug Court. He has a significant substance abuse history that has made him unavailable for the children. He started substance abuse and [dual] diagnosis counseling in August 2016 but was discharged for missing appointments. He had started again with another counselor by the time of the hearing, but had only seen that counselor 4 times and was also suspended for his attendance. He claims he no longer uses any drugs and has not had a drink since his birthday in September 2016. But, he tested positive for alcohol on October 26, 2016[,] and tested positive for cocaine on January 31, May 18 and May 31, 2017. He continues to use marijuana regularly. He has a medical marijuana card but obtains his marijuana off the street. Indeed, his explanation for the failed drug tests is that his marijuana must have been tainted, an explanation the court rejects. Thus, although he seems to have made good progress with his substance abuse, he clearly has not obtained consistent sobriety.

[The father] consistently denied any domestic violence history and therefore did not address that issue. Despite that

denial, he recently began a certified batterer's intervention group and was about 12 weeks into the 48-week program at [the] time of trial. The court is persuaded by the evidence, including prior findings, Zarianna's statements and Zarianna's reaction (nightmares with fear of being hit) that there was violence . . . between [the father] and [the mother] and that at least the older two children were also victims. It does not appear [that the father] has taken responsibility for those actions.

Although affectionate and loving, [the father] has not demonstrated that he is able to manage all three children as their primary caretaker. He has struggled to visit consistently. [Supervised visits were] discontinued in January or February because of missed sessions. The visits are chaotic, and [the father] is reluctant to follow through with direction or to set boundaries. He enrolled in a parenting class (Peaceful Parenting of Young Children) but only attended two out [of] the three workshops in November 2016.

The issue presented to the court is whether [the father] has the ability to meet the needs of the children—to protect them from serious harm and take responsibility for them—within an appropriate time frame. [The father] has progressed in the last year and is addressing the issues that exist in his case, and he has come a long way. Nonetheless, the court is persuaded by clear and convincing evidence that he does not have the ability to provide a consistent, safe, stable and predictable environment for the girls, which is the environment these children must have. . . . Indeed, [the father] himself has acknowledged that there is still work to be done.

The court is also persuaded by clear and convincing evidence that [the father] is not able to do what he needs to do within a time reasonably calculated to meet the needs of the children. . . . This case has been pending for well over 19 months, and follows shortly after another episode of care for 14 months, which followed an episode of care for 2 years. Reunification services have been available for years. The children have all been

in foster care for the majority of their young lives. Zarianna in particular is very anxious and "just wants it to be over" and to be reassured she can stay with the [the foster parents], the place and family she calls home. Permanency is of the utmost critical importance for these children, and they cannot wait any longer.

. . . .

The [foster parents] would adopt the girls if they are freed for adoption. The children have lived with the [foster parents] most of their lives. They are very attached and bonded with them. They seek out [the foster parents] for all their needs. Indeed, it can be hard for the younger children to separate from their foster parents. Zarianna is the only one old enough to express a preference, and she has clearly and repeatedly stated that she wants to stay where she is. Given the strong public policy favoring permanency for children, the court has no difficulty in finding that termination is clearly in the children's best interest. Zarianna, Zariyah and Zaylah cannot wait any longer; they are entitled to permanency now.

(Citations omitted).

[¶4] Given these findings, all of which are supported by competent evidence in the record, the court did not err in its determination of unfitness, nor did it err or abuse its discretion in determining that termination of the father's parental rights, with a permanency plan of adoption, is in the children's best interests. *See In re Logan M.*, 2017 ME 23, ¶ 3, 155 A.3d 430; *In re Thomas H.*, 2005 ME 123, ¶¶ 16-17, 889 A.2d 297.

The entry is:

Judgment affirmed.

Jason R. Ranger, Esq., Lewiston, for appellant father

The Department of Health and Human Services did not file a brief

Waterville District Court docket number PC-2015-34
FOR CLERK REFERENCE ONLY