1997 ME 231

Betty FOWLER

v.

James FOWLER.

Supreme Judicial Court of Maine.

Submitted on Briefs Oct. 17, 1997.

Decided Dec. 17, 1997.

Gregory O. McCullough, Sanford, for defendant.

Appellee did not file a brief.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

LIPEZ, Justice.

[¶ 1] James Fowler appeals from the judgment entered in the Superior Court (York County, *Crowley, J.*) affirming the order entered in the District Court (York, *Levy, J.*) relieving his former wife of her child support obligation pursuant to 19 M.R.S.A. §§ 311–320 (Pamph.1996).[1] On appeal James argues that the court failed to set forth adequate written findings of fact to support a deviation from the child support guidelines; and, alternatively, that the court exceeded the bounds of its discretion in relieving his former wife of her child support obligation. We disagree and affirm the judgment.

---

**1.** Maine's Child Support Guidelines, which were formerly set forth at 19 M.R.S.A. §§ 311–320 (Pamph.1996), were repealed effective October 1, 1997, pursuant to P.L.1995, ch. 694, § B–1. Effective October 1, 1997, the Child Support Guidelines are codified at 19–A M.R.S.A. §§ 2001–2010 (Pamph.1996).

## I.

[¶ 2] Following a four-day trial, the District Court granted a divorce to Betty Fowler and her husband of twelve years, James Fowler, on the ground of irreconcilable differences. The court's divorce judgment awarded primary physical care of the parties' three children to James, and awarded Betty visitation rights on Wednesday nights and on alternating weekends, school breaks, holidays, and for five weeks during the summer.

[¶ 3] In determining Betty's child support obligation, the court found that Betty's adjusted annual earning capacity totaled $7,168,[2] and James' annual earning capacity totaled $21,000. Thus, Betty's and James' incomes represented about 25% and 75%, respectively, of the parties' combined annual income. Using the child support guidelines, the court determined that the basic weekly support entitlement was $152, and 25% of that would be chargeable to Betty. Notwithstanding these calculations, the court's order relieved Betty of any child support obligation: "The Court concludes that taking into account the parties' present economic circumstances and the subsistence needs of Betty as the nonprimary care provider of the minor children, it would be unjust to establish a child support obligation for her." The Superior Court affirmed the order, and this appeal followed.

## II.

■ [¶ 4] On appeal James contends that the court failed to make sufficient findings of fact to support the deviation from the presumptively correct obligation derived from Maine's child support guidelines. Section 316 of the guidelines provides a formula for computing the children's total support entitlement, which is then divided between the parties in proportion to their respective gross incomes. 19 M.R.S.A. § 316(2) & (3). Although the amount so calculated is presumed to be correct, see 19 M.R.S.A. § 315, section 317 authorizes a deviation from the formula

on the basis of specified criteria, including "a finding by the court that the application of the support guidelines would be unjust, inappropriate or not in the child's best interests." 19 M.R.S.A. § 317(3)(Q). If the court deviates from the guidelines pursuant to section 317, it must "incorporate into the order its written findings in support of the deviation." 19 M.R.S.A. § 316(7)(F).

[¶ 5] In this case, the court supported its deviation from the guidelines with written findings regarding Betty's annual earning capacity, which it determined to be $7,168. This undisputed finding is set forth in support of the court's conclusion that she could not meet her food, shelter, and other subsistence needs if she were required to pay child support to James. Moreover, the court's order includes a finding that the children's interests will be best served by shared parental rights and responsibilities, and awards Betty substantial visitation periods during which she will be financially responsible for the children. In the circumstances of this case, the court's order provided sufficient written findings to support its conclusion that an injustice would result from strict compliance with the guideline's formula, and nothing further was required to satisfy the statute.

## III.

■ [¶ 6] James next contends that even if the court adequately supported the deviation with written findings, it nevertheless exceeded the bounds of its discretion by relieving Betty of her child support obligation. Because the Superior Court acted as an intermediate appellate tribunal, we review directly the decision of the District Court. See *Pederson v. Pederson,* 644 A.2d 1045, 1046 (Me.1994). We review for an abuse of discretion, and, absent a violation of a positive rule of law, we will overturn the trial court's decision only if it results in a plain and unmistakable injustice, so apparent that it is

---

**2.** Betty's gross earning capacity was found to be $9,300 per year. The court properly reduced this figure to $7,168, however, to reflect her financial responsibilities to her teenage son (not James' child), who resides with her. *See* 19

M.R.S.A. § 316(4)(A), *repealed by* P.L.1995, ch. 694, § B–1 (effective October 1, 1997). The former section 316(4)(A) is now codified at 19–A M.R.S.A. § 2006(5)(A).

instantly visible without argument. *White v. Allen,* 667 A.2d 112, 115 (Me.1995).

■ [¶ 7] We have stated that "in order to account for differing circumstances, *including variables in income* ..., the Legislature introduced a measure of flexibility by enacting section 317." *LeBlanc v. LeBlanc,* 597 A.2d 62, 63–64 (Me.1991) (emphasis added). Section 317(3)(Q) expressly provides that a finding that the application of the child support guidelines would be unjust will support a deviation. In this case, the court acted within the bounds of its discretion in finding that injustice would result from the application of the guidelines, based on Betty's limited earning capacity and her significant financial responsibilities as a nonprimary care provider of the children.

■ [¶ 8] Moreover, James' reliance on section 316,[3] which limits the support obligation of a nonprimary care provider who demonstrates certain indicia of impoverishment to 10% of his or her weekly gross income, is misplaced. Section 316 does not impose an automatic 10% obligation on every parent who meets its impoverishment criteria. Beyond imposing a *ceiling* on the obligation that can be ordered, section 316 does not otherwise deprive the court of its broad discretion pursuant to section 317.

The entry is:

Judgment affirmed.

---

3. 19 M.R.S.A. § 316(4) sets forth special circumstances that must be considered by the court in determining child support. Section 316(4)(C) provides:

The subsistence needs of the nonprimary care provider must be taken into account when establishing the parental support obligation. If the annual gross income of a nonprimary care provider is less than the federal poverty guideline, or if the nonprimary care provider's income is insufficient to meet work-related expenses and other basic necessities as defined in Title 22, section 4301, subsection 1, that nonprimary care provider's weekly parental support obligation for all the children for whom a support award is being established or modified may not exceed 10% of that nonprimary care provider's weekly gross income, regardless of the amount of the parties' combined income. 19 M.R.S.A. § 316(4)(C) (Pamph.1996), *repealed by* P.L.1995, ch. 694, § B–1 (effective October 1, 1997). The former section 316(4)(C) is now codified at 19–A M.R.S.A. § 2006(5)(C).