1999 ME 62

**Stephanie LEE**

v.

**Samford MAIER, Jr.**

Supreme Judicial Court of Maine.

Argued April 5, 1999.

Decided April 26, 1999.

---

Sandra Hylander Collier (orally), Ellsworth, for the plaintiff.

Michael P. Asen (orally), Peter G. Cary, Mittel, Asen, Hunter & Cary, Portland, for the defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER, and CALKINS, JJ.

RUDMAN, J.

[¶ 1] Samford Maier appeals from the judgment entered in the Superior Court (Hancock County, *Marsano, J.*) amending his obligation to pay child support to his ex-wife, Stephanie Lee. Maier contends the trial court exceeded the bounds of its discretion or committed clear error by finding that attending a remedial private school is in his child's best interest, in its determination of both his income and the cost of his son's tuition, and in modifying his child support responsibilities. In addition, he asserts the trial court erred by retroactively ordering the modifications to the divorce decree. We conclude the trial court improperly modified its judgment retroactively, but otherwise affirm.

[¶ 2] Maier and Lee divorced in 1994 after nineteen years of marriage. In the divorce settlement, Lee received the marital home in Stonington, worth $925,000, where she continues to live with their two sons. The trial court awarded primary residence of their two children to Lee, and Maier, who now lives in Wisconsin, and has assets of $2 million, agreed to pay child support. One of their children is dyslexic.

[¶ 3] Although the parties dispute who made the original decision, Lee arranged for the transfer of their son from a public school in Stonington to the private Landmark School in Massachusetts for sixth grade. Landmark's curriculum is designed to address the specific needs of dyslexic children, and Lee felt the change was in their son's best interest. He has attended Landmark since the 1995–1996 school year. Tuition at the school is costly, ranging from $33,400 during his first year to $34,125 for the 1997–1998 academic year.

[¶ 4] On May 1, 1996, Lee filed a motion to enforce the divorce judgment and for support arrears, contending that Maier was obligated to share the cost of Landmark because it fell under a provision in the divorce decree that they would divide equally all medical costs for their sons. On October 23, 1996, Lee filed a second motion to amend the

original motion, this time specifically seeking to modify the child support order pursuant to 19–A M.R.S.A. § 2009(1) (1998). In the second motion, Lee relied on 19–A M.R.S.A. § 2007(3)(H) (1998), which allows a trial court to depart from the child support guidelines for the educational needs of a child.

[¶ 5] After an evidentiary hearing, the trial court modified the child support decree by ordering Maier to pay ninety per cent of the gross expenses for Landmark. It specifically made the modification retroactive to the date Lee filed her motion for support arrears. Maier then filed this appeal.

[¶ 6] Because we give substantial deference to the trial court in determining child support obligations, we review for an abuse of discretion and will vacate the court's decision "only if it violates 'a positive rule of law' or 'results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument.'" *Hedrich v. Hedrich,* 1998 ME 248, ¶ 2, 720 A.2d 1157, 1158 (quoting *Fowler v. Fowler,* 1997 ME 231, ¶ 6, 704 A.2d 373, 374–75). When, however, the trial court's determination of factual matters is clearly erroneous, we will vacate provided the factual error was not harmless. *See Moore v. Moore,* 609 A.2d 723, 724 (Me.1992).

### I.

[¶ 7] Maier contends that the trial court exceeded the bounds of its discretion by concluding that attending Landmark is in his son's best interest. There is, however, substantial evidence in the record to justify the trial court's finding. First, both Lee and a clinical neuropsychologist testified that the parties' son was struggling academically at the public school in Stonington. Lee stated that in the past the public school removed her son from his regular classes for special education instruction, and never gave him one on one tutorials. The director of Special Services for Stonington's school union testified that only one teacher at each the middle and high school levels is trained to deliver the kind of *structured* multisensory approach a dyslexic child needs, and that tutorials would not be as intensive as they were at Landmark.

[¶ 8] Second, the evidence suggests that the parties' son is thriving at Landmark. Students are placed in small classes with children of the same ability, and therefore teachers can address their general needs as part of the course instruction. In addition, each student receives individual tutoring every day for forty-eight minutes to address his or her specific needs. Lee testified that her son's confidence has improved greatly since his enrollment at Landmark, that he can now recognize his academic strengths and weaknesses, and pushes for new challenges in his curriculum as needed. A school administrator stated that the parties' son has made good progress, but added that he continues to need the small classes to keep him involved and challenged. In addition, the child has expressed a desire to stay at Landmark because he believes the small class size and individual attention are helping him improve more rapidly than at Stonington.

[¶ 9] Third, it is clear that their son was struggling at Stonington because of his dyslexia, and that the curriculum at Landmark is specifically designed to address his needs. It is also clear that he has prospered there and wants to continue attending the school. Contrary to Maier's contention, the availability of a public education program and extensive federal and state guidelines regarding special education does not preclude a parent's decision to place a child in a private school. *See Sikes v. Sikes,* 98 N.C.App. 610, 391 S.E.2d 855, 858 (1990). Given the special circumstances of this case, we conclude that the trial court did not exceed the bounds of its discretion by finding that attending Landmark is in the child's best interest. *See In re Marriage of Aylesworth,* 106 Cal.App.3d 869, 165 Cal.Rptr. 389, 394 (1980) (affirming order of child support to cover private school expenses due to special circumstances).

### II.

[¶ 10] Maier argues that the trial court committed clear error when it determined his income and the cost of attending Landmark, and then exceeded the bounds of its discretion when using those figures to require that he pay ninety per cent of the gross expense.

With respect to income, Maier contends that the trial court erred by choosing not to include a substantial capital gain when calculating Lee's income, but making no similar adjustment when calculating his income. Lee presented evidence that the capital gain in question was a one-time event as a result of liquidating multiple investments to pay for the first year of tuition at Landmark. The child support statute, however, expressly defines gross income as "income from an ongoing source." 19–A M.R.S.A. § 2001(5)(A) (1998). In contrast, Maier's financial records, admitted in evidence, show that he regularly has substantial income from capital gains. Therefore, the trial court's determination that he had roughly ninety per cent of their combined income was not clearly erroneous.

[¶ 11] Maier also contends that the trial court erred by failing to account for the substantial tax benefit to Lee of including the cost of Landmark as a deduction on her federal income tax return.[1] While tuition at Landmark is roughly $34,000 per year, Maier asserts the real cost to Lee is only about $21,000 because of the deduction. This, he argues, results in a windfall for Lee. The trial court, however, went on to examine Lee's expenses, including her household budget, real estate taxes, and travel costs to and from Landmark, and concluded that the difference between her expenses and the child support she received was equivalent to the amount Maier claims is a windfall from the tax deduction. Therefore, contrary to Maier's contention, the trial court properly accounted for the tax consequences to Lee of deducting Landmark's tuition.

[¶ 12] The court specifically based its decision that Maier must pay ninety per cent of the gross expenses for Landmark on the ratio of income between the parties. In connection with the special circumstances of this case, by correctly determining Lee and Maier's respective incomes and appropriately considering the tax benefits of deducting Landmark's cost, we cannot say the trial court exceeded the bounds of its discretion on this point. The trial court could have properly found that Lee has met her burden of proof under *Absher v. LaCombe,* 432 A.2d 1241, 1242–43 (Me.1981) (interpreting 19 M.R.S.A. § 752, *amended by* 19–A M.R.S.A. § 2009(1)). First, the opportunity to attend Landmark is a changed circumstance whose substantial cost renders the child support payments under the original divorce decree inadequate. *See id.* Second, it is clear that Maier has the financial resources to meet the required increase. *See id.* at 1243.

### III.

[¶ 13] Finally, Maier contends that the trial court erroneously applied the modification retroactively to the date of Lee's original motion filed in May 1996. Pursuant to 19–A M.R.S.A. § 2009(2), courts may apply support orders retroactively from the date the notice of a petition for modification was served on the opposing party. In this case, two motions were filed. The first sought support arrears based on the divorce order that the parties would split the children's medical expenses, while the second was a motion to amend the original motion, and argued support should be modified due to the educational needs of the parties' son. Maier contends only the second was properly a "petition for modification" within the meaning of section 2009(2).

[¶ 14] The trial court concluded the second motion related back to the first, and applied the modification retroactively from May 1996 instead of October. Pursuant to M.R. Civ. P. 15(c)(2), an amendment of a pleading relates back to the date of the original pleading when the claim or defense asserted in the amendment arose out of the conduct, transaction, or occurrence set forth

---

1. A taxpayer may deduct expenses paid during the taxable year on behalf of a dependent for medical care not covered by insurance to the extent such expenses exceed 7.5% of adjusted gross income. *See* I.R.C. § 213(a). Divorced parents may each take deductions for medical expenses paid on behalf of their children, regardless of which parent is entitled to the dependency deduction for that child. *See id.* § 213(d)(5). The scope of deductible medical expenses is broad, and includes the cost of attending a special school for mentally handicapped individuals, provided that the individual's condition is such that the resources of the institution in alleviating the handicap are a principal reason for attending that school. *See* Treas. Reg. § 1.213–(e)(1)(v)(a).

in the original pleading. By its terms, however, M.R. Civ. P. 15(c)(2) only applies to pleadings. Rule 7(a) addresses the various forms of pleadings by referring to the complaint, answer, reply to a counterclaim, answer to a cross-claim, *third-party complaint*, and third-party answer. *See* M.R. Civ. P. 7(a).

[¶ 15] Motions, on the other hand, are addressed separately in M.R. Civ. P. 7(b). *See* 1 Field, McKusick & Wroth, *Maine Civil Practice* § 7.2 at 187 (2d ed.1970) (stating motions are not pleadings). Because a post-judgment motion to amend a child support order is not a pleading, M.R. Civ. P. 15(c)(2) does not apply to allow relation back.

[¶ 16] We look nonetheless to the nature of the motions at issue to determine whether the latter motion may be related back to the filing of the first motion. The first motion did not seek a modification of Maier's child support obligation. It sought only to enforce an already existing obligation, the responsibility to pay one-half of the childrens' medical expenses. Standing on its own, that motion would have been insufficient to allow the court to exercise its authority pursuant to 19–A M.R.S.A. § 2009. That section also provides that "child support orders may be modified retroactively but only from the date that notice of a petition for modification has been served upon the opposing party." 19–A M.R.S.A. § 2009(2). Nothing in the first motion put Maier on notice that his ongoing child support obligation could be modified by the court. On these facts, the court erred in relating the modification motion back to the original motion.

The entry is:

Judgment modified to apply retroactively to October 23, 1996, and so modified affirmed.

