2000 ME 96

**DEPARTMENT OF HUMAN SERVICES, o/b/o Susan H. MONTY**

v.

**Charles E. MONTY Jr.**

Supreme Judicial Court of Maine.

Submitted on Briefs Feb. 25, 2000.

Decided May 19, 2000.

Andrew Ketterer, Attorney General, Ethna Mary Friedman, Asst. Atty. General, Mary B. Najarian, Asst. Atty. General, Portland, Marianna M. Fenton, Windham, for plaintiff.

Ralph W. Brown, Portland, for defendant.

Before WATHEN, C.J., and CLIFFORD, RUDMAN, DANA, SAUFLEY, ALEXANDER and CALKINS, JJ.

CLIFFORD, J.

[¶ 1] Charles Monty appeals from a judgment entered in the Superior Court (Cumberland County, *Crowley, J.*) dealing with orders obligating Monty to pay child support for the years 1993 and 1994, and for 1996, 1997, and 1998. The judgment was entered following a remand from this

Court. *See Department of Human Servs. v. Monty*, 1998 ME 11, 704 A.2d 401 (*Monty I* ). Charles contends that the court erred when it refused to reconsider the support orders in effect for the years 1996, 1997, and 1998, and concluded they were to remain in effect. He also argues that the court abused its discretion in establishing the amount of support that Charles has to pay for the years 1993 and 1994 when, in considering Charles's ability to pay, and pursuant to 19–A M.R.S.A. § 2007(3)(E) (1998), it deviated upward from the child support guidelines. Finding no error or abuse of discretion, we affirm the judgment.

[¶ 2] Charles had been ordered to pay weekly child support for his three children at the time he was divorced from Susan Monty in 1989. Susan was receiving public assistance in 1994 when the Department, after it had learned that Charles had received income from lawsuit settlements in 1993 and 1994 that he had failed to disclose in a previous child support hearing,[1] filed a petition to increase Charles' child support payments.

[¶ 3] Charles received $30,000 in 1993 from the settlement of a claim arising out of a 1987 car accident, and received an additional $20,000 in 1994 from the settlement of a medical malpractice claim. Acting on a stipulation that it decide whether Charles's support obligation should be modified based on these settlements, the court (*MacNichol, J.*) determined Charles's child support obligations for the years 1993 and 1994. In doing so, the court attributed the entire amount of the proceeds to Charles as gross income for the years 1993 and 1994. The court also determined the support obligations of Charles for the years 1995 through 1998.[2] Those determinations were the subject of Charles's first appeal to us.

[¶ 4] In that first appeal, Charles contended that the trial court erred when it mischaracterized the settlement proceeds he had received as gross income, and further contended that the evidence did not support the amounts of support the court determined Charles had to pay. We agreed with Charles's first contention and concluded that the Superior Court had erred when, in calculating Charles's income on the forms provided by the Department, it included the entire amount of the settlement proceeds in Charles's gross income for 1993 and 1994. *See Monty I*, 1998 ME 11, ¶ 6, 704 A.2d at 403.[3] The opinion made no mention of Charles's other contentions on appeal and did not conclude that the orders for the years 1996 through 1998, which were not in any way based on consideration of the 1993 and 1994 settlement monies, were in any way improper. The opinion concluded with the following mandate: "Judgment vacated. Remanded for proceedings consistent with this opinion." *Id.*

[¶ 5] After remand, the Superior Court provided the parties with an opportunity to add to the record regarding the 1993 and 1994 orders. The parties agreed no further evidence was necessary, and the court took no further evidence. In determining the amount of support awards for 1993 and 1994, and in calculating Charles's ability to pay for those years, the court deviated upward from the child support guidelines for 1993 and 1994, taking into account the settlements received by Charles, not, however, as gross income, but pursuant to 19–

---

1. In 1992, after going through certain financial difficulties, Charles petitioned for a modification of the support award in order that he could afford to attend law school in Florida. The court reduced his payments to $66 per week. In July of 1993, the payments were further reduced to $25 per week.

2. The court ordered that Charles make the following weekly payments:

| | | | | | |
|---|---|---|---|---|---|
| 1993 | $172 | 1995 | $ 0 | 1997 | $170 |
| 1994 | $129 | 1996 | $114 | 1998 | $188 |

3. Gross income is defined in 19 M.R.S.A. § 311(5)(A) and only includes income from an ongoing source. The settlement monies were not income from an ongoing source and were not gross income. *See Monty I*, 1998 ME, 11, ¶ 6, 704 A.2d at 403.

A M.R.S.A. § 2007(3)(E) as nonrecurring income.[4]

[¶ 6] Charles also requested that the court reconsider the awards it had previously made for the years 1996, 1997, and 1998[5] because, he contended, the projected income figures used to calculate the awards understated Susan's income and overstated his income. The court denied this request, concluding that the 1996 through 1998 orders were not disturbed by our opinion in *Monty I*, were res judicata, and were to remain in effect. This appeal followed.

## I. THE 1996, 1997, AND 1998 ORDERS

[¶ 7] Charles contends that the court erred when it held that the 1996, 1997 and 1998 awards were res judicata[6] and declared them in full force and effect. The basis for Charles's claim is that the court was under the mistaken impression that, in Charles's first appeal, he had only challenged the application of the settlement proceeds to his "gross income" for the support awards for 1993 and 1994. In addition, Charles contends that he should be able to reopen these 1996, 1997 and 1998 awards because they were based on projected, rather than actual, income figures. We review whether a trial court has properly construed a mandate of this Court on remand for an error of law. *See Plumbago Mining Corp. v. Sweatt,* 444 A.2d 361, 370 (Me.1982).

[¶ 8] Although the Superior Court mistakenly concluded that Charles failed to raise an issue with respect to the 1996 through 1998 awards in his first appeal,

that conclusion is understandable because, in our prior decision, we chose to address only Charles's claims with respect to the 1993 and 1994 orders. *See Monty I,* 1998 ME 11, ¶ 1, 704 A.2d at 402.

[¶ 9] The Superior Court is correct, however, in its conclusion that the 1996 through 1998 orders were not vacated in *Monty I.* The mandate in *Monty I* vacated and remanded for "proceedings consistent with this opinion." Nothing in our opinion made reference to any error in the 1996 through 1998 child support orders, and for the Superior Court to treat those orders as if they had been vacated would *not* be "consistent with this Court's opinion." Our opinion in *Monty I* vacating the judgment addresses whether the settlements received by Charles should have been considered by the trial court as gross income, and is directed at only the 1993 and 1994 orders. Accordingly, the unaffected orders for 1996 through 1998 were subject to the law of the case on remand, and the court properly refused to consider evidence in support of a change in those orders.

## II. THE 1993 AND 1994 ORDERS

[¶ 10] Charles contends that the court erred in the way it deviated from the child support guidelines when determining the amount of support he is required to pay for 1993 and 1994. In determining orders of support, the child support guidelines are presumed to govern the amount the court orders a parent to pay for child support. *See* 19–A M.R.S.A. §§ 2005, 2006 (1998). A court may deviate from the child support guidelines pursuant to 19–A

---

4. The court ordered that Charles make the following weekly payments: $150 in 1993 and $125 in 1994. These represent upward deviations of $125 and $100 from the child support guidelines based on Charles's non-recurring income, and reflecting a base obligation of $25 per week in both years. The orders for 1995 through 1998 remained in effect.

5. The order for 1995 provided that Charles would pay no support for that year, and is not challenged.

6. As an initial matter, the term "res judicata" is technically incorrect in this context. The doctrine applied by the Superior Court here is more correctly termed "law of the case" because it involves respecting the judgment of another court in the same case, not in a separate attempt to bring the same cause of action. *See Grant v. City of Saco,* 436 A.2d 403, 405 (Me.1981).

M.R.S.A. § 2007 (1998).[7] We review such a deviation from the guidelines "for an abuse of discretion, and, absent a violation of a positive rule of law, we will overturn the trial court's decision only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Fowler v. Fowler*, 1997 ME 231, ¶ 6, 704 A.2d 373, 374–75 (citing *White v. Allen*, 667 A.2d 112, 115 (Me.1995)).

[¶ 11] Charles contends the court exceeded its discretion because, in deviating upward from the child support guidelines, it considered only one factor—the settlements Charles received—and disregarded other factors set out in section 2007. Charles does not dispute that the $30,000 and $20,000 settlements received by him in 1993 and 1994 may be considered as nonrecurring income pursuant to section

---

7. The statute provides:

**Deviation from child support guidelines**

1. Rebutting presumption. If the court or hearing officer finds that a child support order based on the support guidelines would be inequitable or unjust due to one or more of the considerations listed under subsection 3, that finding is sufficient to rebut the presumption established in section 2005.

2. Proposed findings. A party in a court action proposing deviation from the application of the support guidelines shall provide the court with written proposed findings showing that the application of the presumptive amount would be inequitable or unjust.

3. Criteria for deviating from support guidelines. Criteria that may justify deviation from the support guidelines are as follows:

A. The nonprimary residential care provider is in fact providing primary residential care for more than 30% of the time on an annual basis;

B. The number of children for whom support is being determined is greater than 6;

C. The interrelation of the total support obligation established under the support guidelines for child support, the division of property and an award of spousal support made in the same proceeding for which a parental support obligation is being determined;

D. The financial resources of each child;

E. The financial resources and needs of a party, including nonrecurring income not included in the definition of gross income;

F. The standard of living each child would have enjoyed had the marital relationship continued;

G. The physical and emotional conditions of each child;

H. The educational needs of each child;

I. Inflation with relation to the cost of living;

J. Available income and financial contributions of the domestic associate or current spouse of each party;

K. The existence of other persons who are actually financially dependent on either party, including, but not limited to, elderly, disabled or infirm relatives, or adult children pursuing post-secondary education. If the primary care provider is legally responsible for another minor child who resides in the household and if the computation of a theoretical support obligation on behalf of the primary care provider would result in a significantly greater parental support obligation on the part of the nonprimary care provider, that factor may be considered;

L. The tax consequences of a support award, including the substantial monetary benefit that a party may derive from any federal tax credit for child care expenses;

M. The fact that the incremental cost of health insurance premiums required to be paid by a party, notwithstanding the deduction of these premiums from gross income, exceeds 15% of that party's share of the total support obligation;

N. The fact that income at a reasonable rate of return may be imputed to nonincome-producing assets with an aggregate fair market value of $10,000 or more, other than an ordinary residence or other asset from which each child derives a substantial benefit;

O. The existence of special circumstances regarding a child 12 years of age or older, for the child's best interest, requires that the primary residential care provider continue to provide for employment-related day care;

P. An obligor party's substantial financial obligation regarding the costs of transportation of each child for purposes of parent and child contact. To be considered substantial, the transportation costs must exceed 15% of the yearly support obligation; and

Q. A finding by the court or hearing officer that the application of the support guidelines would be unjust, inappropriate or not in the child's best interest.

19-A M.R.S.A. § 2007.

2007(3)(E). He contends, however, that the court impermissibly disregarded certain countervailing factors. These include the suggestion before the court that one daughter had moved to live with Charles in April of 1994, that another daughter moved in at some unspecified time thereafter, that Susan had made improvements to her home at the expense of the children, that Charles's decision to go to law school was to "improve[ ] his economic prospects." He argues that the child support awards for 1993 and 1994 are "a significant and unjustified economic windfall for Susan."

■■ [¶ 12] In its decision to deviate from the child support guidelines, the court relied on 19–A M.R.S.A. § 2007(3)(E), and properly considered the settlements as "nonrecurring income not included in the definition of gross income." 19–A M.R.S.A. § 2007(3)(E). The court concluded that its upward deviation from the child support guidelines was appropri-

ate based on: (1) the amount of the settlements; (2) Charles's choice to go to law school "at the expense of his children" and "at a time when he had an obligation to support his three children"; and (3) the children's resulting dependence on public assistance. Although the court could have placed more emphasis on the factors suggested by Charles, its decision not to do so, and its decision to deviate upward from the child support guidelines in the amount that it did was not an abuse of discretion that is "instantly visible without argument." *Fowler*, 1997 ME 231, ¶ 6, 704 A.2d at 375.

The entry is:

Judgment affirmed.