MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 171
Docket:       BCD-16-555
Submitted
 on Briefs:   June 29, 2017
Decided:      August 1, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

TIMOTHY W. HARPER

v.

SHERYL E. HARPER

JABAR, J.

[¶1]   Timothy W. Harper appeals from a judgment entered in the Business and Consumer Docket (*Horton, J.*) partially denying his motion to reconsider and amend a previously-entered divorce judgment distributing his and Sheryl E. Harper's assets.  We affirm the judgment.

## I.  BACKGROUND

[¶2]   The following facts are derived from the court's final amended divorce judgment and are supported by evidence in the record.  *See Berntsen v. Berntsen,* 2017 ME 111, ¶ 2, --- A.3d ---.  Timothy and Sheryl were married in New York in 1978.  During their approximately thirty-seven-year marriage, the couple amassed considerable assets and managed several businesses.  The

2

operation of two of those businesses is of particular importance for the purposes of this appeal.[1]

A.    Northeastern Seafood, Inc.

[¶3]  Northeastern Seafood, Inc. (NES) is a commercial lobster business operating from a wharf in Southwest Harbor.  NES purchases lobsters from fishermen and resells the lobsters to either commercial or individual buyers. Sheryl was NES's original proprietor, starting the business in 1986 and developing it into a successful enterprise over time.

[¶4]   Beginning sometime between 1997 and 2005, Timothy began managing NES, while Sheryl assumed a less active role.  After taking over operation of NES, Timothy instituted a number of changes, including implementing a separate and additional bookkeeping system and removing the credit card processing infrastructure.  Timothy removed the credit card systems for the purpose of retaining cash that NES received for retail lobster sales without recording it as corporate income.  He also decided to sell lobsters to only two commercial buyers, thereby significantly decreasing NES's profits.  While in control of NES, Timothy opened and drew down upon two lines of credit that, at the time of the divorce proceeding, carried a total

---

[1] The parties have stipulated that these businesses are marital assets.

balance of approximately $350,000. This was in stark contrast to Sheryl's management of the company; when she gave up control of the business, NES operated with limited debt and substantial cash reserves.

B.     The Dictator, Inc.

[¶5]  The Dictator, Inc. (Dictator) is a corporation of which Timothy is the sole shareholder. It is a profitable business that owns a scallop boat and associated fishing permits, which have a collective value of approximately $4,500,000. Between 2012 and 2015, Timothy engaged in a series of transactions using Dictator operating accounts that were not related to the business, including purchasing automobiles and recreational vehicles for his personal use. He also used Dictator income to pay himself year-end bonuses of $150,000 and $200,000.[2]

C.     Separation and Divorce Proceedings

[¶6]  The parties separated in July 2012, and on January 8, 2013, Timothy filed a complaint for divorce in the District Court. On April 1, 2014, the District Court (Augusta, *Stanfill, J.*) entered an interim order granting each party exclusive possession of certain real estate and allocating between them

---

[2] Timothy testified that these funds were used to pay the parties' taxes for tax years 2012 and 2013 and argues that the court therefore erred in concluding that those payments constituted economic misconduct. However, as the trier of fact, the court was at liberty to "believe or disbelieve" this testimony. *Huber v. Williams*, 2005 ME 40, ¶ 15, 869 A.2d 737.

4

responsibility for operating their various businesses. The order provided that Timothy would be responsible for operating NES and Dictator during the pendency of the divorce proceedings.

[¶7] Almost two years after the divorce complaint was filed, on November 19, 2014, the matter was transferred to the Business and Consumer Docket. There, the court conducted a hearing on the complaint in two phases, the first of which began on January 28, 2015. Before the conclusion of the first phase, on February 26, 2015, the court entered a divorce judgment notwithstanding the pendency of other claims. *See* M.R. Civ. P. 115(b). The following day, the court entered an amended interim order that, inter alia, appointed a referee to begin the process of selling some of the parties' assets and to oversee the management of their businesses pending the entry of a final divorce judgment.

[¶8] The second phase of the hearing took place over four days beginning on April 7, 2016. At the conclusion of the second phase, the court issued a forty-one-page amended divorce judgment distributing the parties' assets and directing the referee to oversee the liquidation of the properties and businesses described in the judgment.

[¶9]  The court found that Timothy engaged in economic misconduct while operating NES and Dictator, which resulted in the marital estate being deprived of "at least $800,000 from what should have been shared income from" the two companies.[3]  Accordingly, when fashioning a property distribution award, the court imputed to Timothy the receipt of $800,000. *See* 19-A M.R.S. § 953(1) (2016).

[¶10]  The judgment also ordered Timothy to reimburse Sheryl $50,000 in attorney fees after concluding that Timothy engaged in conduct that unnecessarily prolonged litigation and that he improperly used marital funds "in which [Sheryl] had a reasonable expectancy and interest" to pay his attorneys.

[¶11]  Timothy subsequently filed a motion to reconsider and amend the judgment, which the court granted in part and denied in part.  He now appeals.

## II.  DISCUSSION

A.    Economic Misconduct

[¶12]  On appeal, Timothy challenges the court's finding that, through his operation of NES and Dictator, he committed economic misconduct

---

[3]  The court also found that Sheryl committed economic misconduct related to her management of one of the parties' businesses that resulted in the marital estate being deprived of $30,000.

6

resulting in the diminution of the marital estate by approximately $800,000. "A court's finding that a party to a divorce did or did not engage in economic misconduct is reviewed for clear error." *Catlett v. Catlett*, 2009 ME 49, ¶ 31, 970 A.2d 287 (quotation marks omitted). We will not disturb a divorce court's finding of economic misconduct if that finding is "supported by competent evidence in the record." *Efstathiou v. Aspinquid, Inc.*, 2008 ME 145, ¶ 35, 956 A.2d 110. Here, where Timothy failed to request further findings of fact pursuant to M.R. Civ. P. 52(b), should there be any "gaps" in the court's factual analysis, we will "assume that the trial justice found all of the facts necessary to support the decision." *Murray v. Murray*, 529 A.2d 1366, 1368 n.1 (Me. 1987).

[¶13] There is competent evidence in the record to support the court's finding that Timothy engaged in economic misconduct while operating NES and Dictator. His actions in unilaterally incurring significant liabilities, implementing a separate accounting procedure, systematically retaining cash from retail lobster sales, and refusing to sell lobsters to more than a few commercial buyers while managing NES are well documented in the record. These changes had a detrimental impact on the marital estate, and Timothy provided no legitimate business purpose for instituting them. Likewise, as the

court correctly noted, allegations that Timothy engaged in economic misconduct while managing Dictator are substantiated by voluminous records containing evidence of "largely undisputed transactions" through which he unreasonably diminished the value of that marital asset.

[¶14] Further, we are not persuaded by Timothy's argument that, to prove economic misconduct, Sheryl was required to trace the misappropriated funds into the hands of third parties. In *Catlett*, the case upon which Timothy relies to make this argument, we upheld the trial court's finding that a spouse did not engage in economic misconduct after concluding that "[w]hile [the spouse] may not have a good recollection as to how the money was spent, *there was no evidence* that she spent the money in an inappropriate manner." 2009 ME 49, ¶ 32, 970 A.2d 287 (emphasis added). Not so here. Unlike the circumstances in *Catlett*, where there was no evidence to corroborate the allegations of economic misconduct, here there was ample record evidence detailing the numerous transactions Timothy engaged in that unreasonably and inappropriately diminished the value of the marital estate.

[¶15] Similarly, Timothy's argument that a party must violate a court order to commit economic misconduct is unpersuasive. Apart from the fact that we have upheld trial courts' findings of economic misconduct in the

absence of a violation of a court order, *see, e.g.*, *Quin v. Quinn*, 1997 ME 131, ¶¶ 7-9, 696 A.2d 432; *Berntsen*, 2017 ME 111, ¶¶ 3, 16-18, --- A.3d ---, restricting the application of economic misconduct to only those instances where a party has violated a court order may have the detrimental effect of encouraging savvy litigants contemplating divorce to strategically deplete marital assets before initiating the action. Therefore, the court did not err in finding that Timothy engaged in economic misconduct that deprived the marital estate of approximately $800,000.

B.      Attorney Fees and Appointment of Referee

[¶16]   Finally, Timothy argues that the court abused its discretion in ordering him to pay a portion of Sheryl's attorney fees and erred in "appointing" a referee in its final judgment because, upon the issuance of the judgment, the case was no longer "pending" for the purposes of M.R. Civ. P. 53. We discern no abuse of discretion in the court's decision to award Sheryl a portion of her attorney fees. *See Estate of Ricci*, 2003 ME 84, ¶ 30, 827 A.2d 817 (stating that a court, in awarding attorney fees in a divorce proceeding, may consider, among other factors, "whether the conduct of a party has contributed to the duration of litigation" and "all factors that reasonably bear on the fairness and the justness of the award" (quotation marks omitted)).

Similarly, the court did not err in instructing the previously-appointed referee to oversee distribution of the parties' assets because this function is contemplated by the Rule. *See* M.R. Civ. P. 53(c).

The entry is:

Judgment affirmed.

_____

Susan Schultz McEvoy, Esq., Portland, for appellant Timothy W. Harper

Kristin A. Gustafson, Esq., Gustafson Family Law, Augusta, for appellee Sheryl E. Harper

Business and Consumer Docket docket number FM-2014-02
FOR CLERK REFERENCE ONLY