MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:      2018 ME 115
Docket:        Cum-17-371
Submitted
 On Briefs:   January 11, 2018
Decided:       August 14, 2018

Panel:         ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.


MICHELLE L. (GEORGE) SULLIVAN

v.

WILLIAM A. GEORGE


HJELM, J.

[¶1]  Michelle L. (George) Sullivan appeals from a divorce judgment entered by the District Court (Portland, *J. French, J.*).  She contends that the court abused its discretion by ordering, sua sponte, a downward deviation of William A. George's child support obligation from the amount prescribed by the guidelines, by ordering William to pay spousal support in an amount that Michelle asserts is insufficient in duration and amount, and by declining to award attorney fees beyond those provided through an interim order.  We vacate the court's child support order and remand for entry of a child support order pursuant to the guidelines, but we affirm the judgment in all other respects.

## I.  BACKGROUND

[¶2]  The following facts, which are supported by the record, are drawn from the divorce judgment.  *Harper v. Harper*, 2017 ME 171, ¶ 2, 169 A.3d 385.

[¶3]   Michelle and William were married in 1995 and have three children—at the time of the hearing, one was an adult and two were minors.[1] In early 2016, Michelle commenced this divorce action.  At the two-day final hearing held in May of 2017, the parties stipulated to some parenting issues and to the distribution of most of the real property and the valuation of some of the personal property and debt.  The contested issues included the amount of the parties' incomes for purposes of determining child support, spousal support, and attorney fees.[2]

[¶4]  In the divorce judgment issued in July of 2017, the court found that the parties had agreed that if they started a family, Michelle would stay at home with the children.  Michelle is a physical therapist who has worked generally on a per diem basis, although her license has expired.  She is also a certified Pilates instructor.  Following the birth of the parties' first child in 1997, Michelle

---

[1]  The middle child was to begin his senior year in high school in 2017.

[2]  The contested issues also included the remaining parental rights and responsibilities, and the distribution and valuation of the some of the property and debt.  The court's adjudication of those matters is not at issue on appeal.

worked as a physical therapist intermittently, and when she did so, her employment was less than full-time. Her most recent employment, which was in 2016[3] and paid her roughly $45 per hour, ended after only two weeks because her training was not current.

[¶5]   The court fixed Michelle's current annual imputed employment income at $14,040, based on an hourly wage of $9 for 30 hours per week. The court declined to attribute income to Michelle based on full-time employment because she will be required to intern or volunteer for at least 1,000 hours to qualify as an independent practitioner in a specialized field that will combine her vocational goals as a Pilates instructor and physical therapist. The court found that Michelle's annual living expenses are nearly $125,000.[4]

[¶6]   William is a physician and is the founder and current one-third owner of a medical practice. He earns $335,000 annually and incurs annual living expenses totaling just over $100,000. William lives with a domestic partner who earns $37,000 per year and contributes toward the monthly household expenses.

---

[3] The evidence indicated that before her short period of employment in 2016, Michelle had not been employed at all since at least 2010.

[4] The record indicates that the expenses claimed by Michelle include, among others, the monthly mortgage payments for the formerly marital residence that the parties agreed would be awarded to her, a significant amount for prescriptions, and expenses related to the children.

4

[¶7]  Pursuant to the parties' agreement, the court ordered that the children would live primarily with Michelle with rights of contact awarded to William.  The court calculated the amount of weekly child support that William would be required to pay pursuant to the guidelines, *see* 19-A M.R.S. § 2006 (2016),[5] which was $626 for two children and $444 for the youngest child after William's obligation to pay support for the middle child ends, *see supra* n.1. Then, even though neither party requested that the court depart from the child support guideline amounts, the court ordered a downward deviation from the guidelines on the basis that "the support guidelines would be inequitable or unjust in consideration of the interrelation of the total support obligation[,] . . . the division of property[,] and an award of spousal support[,] as well as available income and financial contribution of [William's] domestic associate." For those stated reasons, the court reduced William's weekly support obligation for two children from $626 to $550, and from $444 to $400 for one child.

[¶8]  The court's division of the marital estate resulted in a net distribution of assets and liabilities that was nearly equal.

---

[5]  We cite to the 2016 version of 19-A M.R.S. § 2006 because the statute was amended after the divorce judgment was entered in July of 2017. *See* P.L. 2017, ch. 30, §§ 4-10 (effective Nov. 1, 2017). The amendments do not bear on the issues presented here.

[¶9] The court ordered William to pay general spousal support of $3,600 per month. In addition, the court awarded Michelle monthly transitional support of $3,600 for thirty months "to allow for Michelle's reentry in the workforce." *See infra* n.9. The court stated that the awards of general and transitional spousal support resulted from its consideration of the factors contained in 19-A M.R.S. § 951-A(5) (2017), including the length of the parties' marriage, Michelle's contributions as a homemaker, and the employment and income-producing history of each party. Finally, the court denied Michelle's request for attorney fees.

[¶10] Following entry of the judgment, Michelle filed a motion for further findings and conclusions on several issues, including the amount of child support, and a motion to amend the judgment. *See* M.R. Civ. P. 52(b), 59(e). The court made several corrections within the child support orders without altering the reduced amounts of child support that William was required to pay, but the court otherwise denied the motions, explaining that the judgment articulated the factual and legal bases for its determinations. Michelle filed a timely notice of appeal. *See* 14 M.R.S. § 1901(1) (2017); 19-A M.R.S. § 104 (2017); M.R. App. P. 2B(c).

## II. DISCUSSION

[¶11] Michelle contends that the court erred by awarding an insufficient amount of spousal support and by ordering a downward deviation of child support.[6] Because we conclude that the court's reasoning for the downward deviation of child support is not supported by the record, we focus our discussion on that issue.

[¶12] We review a deviation from the statutorily presumptive child support guidelines "for an abuse of discretion, and, absent a violation of a positive rule of law, we will overturn the trial court's decision only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." *Dep't of Human Servs. v. Monty*, 2000 ME 96, ¶ 10, 750 A.2d 1276 (quotation marks omitted).

[¶13] A determination of whether a court abused its discretion involves a three-part analysis: (1) whether factual findings are "supported by the record according to the clear error standard; (2) [whether] the court [understood] the law applicable to its exercise of discretion; and (3) given all the facts and

---

[6] Michelle also asserts that the court erred by declining to award her attorney fees, which totaled nearly $50,000. In doing so, the court applied the correct legal principles and recognized salient aspects of the record, such as the equal division of the marital estate and William's previous payment of $15,000 toward Michelle's attorney fees pursuant to an interim order. Michelle's challenge to this aspect of the judgment is not persuasive, and we do not discuss it further. *See Pearson v. Wendell*, 2015 ME 136, ¶¶ 45, 47, 125 A.3d 1149.

applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness." *Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074. "A fact-finding is clearly erroneous only if there is no competent evidence in the record to support it." *Wandishin v. Wandishin*, 2009 ME 73, ¶ 14, 976 A.2d 949. Because Michelle filed a proper motion for further factual findings on the child support order, M.R. Civ. P. 52(b)—a motion that the court denied because it stated that it had already articulated the basis for its determination—our review is confined to the court's explicit findings. *Ehret v. Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101.

[¶14]  The fundamental step in determining the amount of a parent's child support obligation is to calculate that amount pursuant to the support guidelines, which takes into account the number of children, the parents' incomes, child care costs, a child's extraordinary medical expenses, and the costs of private health insurance. 19-A M.R.S. § 2006. "There is a rebuttable presumption that the child support obligation derived from the child support guidelines is the amount to be ordered, absent special circumstances or a deviation from the guidelines . . . ." *Sullivan v. Doe*, 2014 ME 109, ¶ 25, 100 A.3d 171; *see also* 19-A M.R.S. § 2005 (2017). The court may deviate from that presumptive amount upon a finding that that amount is "inequitable or unjust"

8

due to at least one of the considerations enumerated in the governing statute, 19-A M.R.S. § 2007(1), (3) (2017).

[¶15] Here, the presumptive child support amount, as calculated in the child support worksheets, was $626 for two children and $444 when William is obligated to pay for the benefit of only the youngest child. The court determined sua sponte[7] that a downward deviation from the presumptive amount was justified, and the court accordingly reduced the amount to $550 per week for two children and $400 per week when only one child is eligible. The amount of the reduction from the presumptive obligation is therefore $76 per week for two children ($3,952 annually) and $44 per week when the support is for one child ($2,288 annually).

[¶16] The court explained that there were three reasons to warrant the downward deviation:

> The court finds that a child support order based on the support guidelines would be inequitable or unjust in consideration of the interrelation of the total support obligation established under the support guidelines for child support, the division of property[,] and an award of spousal support as well as available income and

---

[7] Because neither party requested that the court deviate from the presumptive amount of child support, the parties did not file written proposed findings that are otherwise required to explain why "the presumptive amount would be inequitable or unjust." 19-A M.R.S. § 2007(2) (2017). Further, because Michelle did not request that the court order an *upward* deviation from the guideline amount, we do not address the question of whether, if any departure from the child support guidelines was appropriate, it should have been an increase.

financial contribution of [William's] domestic associate. And so the court believes that a downward deviation is appropriate.

These ostensible justifications for the downward deviation are derived from the factors that a court may use for that purpose:

C. The interrelation of the total support obligation established under the support guidelines for child support, the division of property and an award of spousal support made in the same proceeding for which a parental support obligation is being determined;

. . . .

J. Available income and financial contributions of the domestic associate or current spouse of each party.

*Id.* § 2007(3) (C), (J).

[¶17] In the abstract, the court's legal analysis is faithful to the statutory framework germane to the deviation analysis. The question presented here, however, is whether—given the record in this case—the court erred by invoking these grounds for a downward deviation. For the reasons noted above, *supra* ¶ 13, we will not attribute to the court's analysis any findings or conclusions other than those explicitly articulated in its judgment. *See Ehret*, 2016 ME 43, ¶ 12, 135 A.3d 101. Therefore, we consider only the three grounds identified by the court—the division of property, the financial contributions of William's domestic partner, and the award of spousal support—to determine if

the downward deviation was within the bounds of the court's discretion. *See Monty*, 2000 ME 96, ¶ 10, 750 A.2d 1276.

[¶18] First, the marital estate was divided predominately by agreement, and virtually evenly, with Michelle and William each receiving a net value of roughly $270,000. Because Michelle will not receive a greater value of net marital assets than William, and because none of the court's other findings regarding the division of the marital estate justifies a departure from the presumptive amount of child support, this consideration—either by itself or in combination with the other facts cited by the court—does not support a reduction of William's child support obligation.

[¶19] Second, William's domestic partner is employed in the medical field, earns $37,000 annually, and contributes toward their joint living expenses by paying for groceries and household supplies.[8] Because William's living expenses are *reduced* because of his partner's material support of the household in which he lives, this factor also does not justify a reduction of William's obligation to support his children.

---

8 Although not stated in the judgment, the evidence reveals that the domestic partner spends between $600 and $700 each month for groceries and supplies.

[¶20]  Finally, we consider the award of spousal support as it bears on the amount of child support.  Contrary to Michelle's direct challenge to the amount of spousal support that William will be required to pay her, the court did not abuse its discretion in determining the amount, duration, and types of spousal support.  *See Haskell v. Haskell*, 2017 ME 91, ¶ 16, 160 A.3d 1176 (reviewing a spousal support award for an abuse of discretion).  Given the court's findings regarding the parties' finances, however, the spousal support ordered by the court—although not outside the bounds of its discretion—was not favorable to Michelle.  With support in the record, the court found that she is presently capable of only part-time employment at a low wage—$9 per hour—so that she can commit additional time to attain the practice-based qualifications needed for full-time and more remunerative employment in the future.[9]  Thus, Michelle's earning capacity is very modest—$14,000 annually.  During the thirty-month period of transitional spousal support payments, Michelle will receive $86,400 annually in combined general and transitional

---

[9]  As we note above, *see supra* ¶ 5, the court found that Michelle needs to perform at least 1,000 hours of work with a licensed therapist to attain the credentials needed for her to practice independently.  Michelle testified, however, that this requirement could take as much as 5,000 hours and likely three to four years to complete, which would be beyond the period of transitional support ultimately ordered by the court.  In this context, we note that the award of spousal support, including transitional support, is subject to future modification if a court were to determine "that justice requires" such a change.  19-A M.R.S. § 951-A(4) (2017); *see also, e.g.*, *Marston v. Marston*, 2016 ME 87, ¶¶ 7-9, 141 A.3d 1106; *McAllister v. McAllister*, 2011 ME 69, ¶¶ 11-13, 21 A.3d 1010.

spousal support, resulting in an annual total of approximately $100,000 from imputed employment income and spousal support. This is significantly less than the annual living expenses of $125,000 incurred by Michelle and the two minor children, and the support order barely brings Michelle's total receipts above the amount of her expenses.

[¶21] In contrast, William earns nearly $335,000 per year and has annual living expenses of just over $100,000, with some of those expenses being paid by his domestic partner.

[¶22] As the court noted, the parties' marriage was of significant duration, and, by agreement of the parties, Michelle's responsibilities within the family included staying at home with the children as their primary caregiver, thereby deemphasizing her professional development. *See* 19-A M.R.S. § 951-A(5).

[¶23] Particularly when the award of spousal support is viewed in a more nuanced way that is appropriate for appellate review, *see, e.g., Jandreau v. LaChance*, 2015 ME 66, ¶¶ 14-26, 116 A.3d 1273, this broad-stroke description of some of the important factors germane to that award demonstrates that, although the award is not so conservative that it rises to the level of error, the award was not so beneficent toward Michelle that it could justify a reduction of

the statutorily presumptive amount of child support that William will be required to pay. This is especially so when William did not even *seek* a downward deviation.

[¶24] For these reasons, the record does not support the factors used by the court for a downward deviation from William's presumptive child support obligation and does not support the court's ultimate determination that the presumptive amounts of child support as calculated pursuant to the guidelines are "inequitable or unjust." 19-A M.R.S. § 2007(1); *accord Monty*, 2000 ME 96, ¶ 10, 750 A.2d 1276 ("[W]e will overturn the trial court's decision only if it results in a plain and unmistakable injustice, so apparent that it is instantly visible without argument." (quotation marks omitted)). We therefore vacate the child support order and remand for the court to enter a child support order requiring that William pay child support in the amounts calculated pursuant to the child support guidelines.[10]

---

[10] In some cases where we have vacated certain financial aspects of a divorce judgment, we authorized the court on remand to reconsider other aspects of the judgment that might be affected by changes necessary to correct the original error. *See, e.g.*, *Mooar v. Greenleaf*, 2018 ME 23, ¶¶ 8, 13, 179 A.3d 307; *Dube v. Dube*, 2016 ME 15, ¶¶ 1, 10-14, 131 A.3d 381; *Thumith v. Thumith*, 2013 ME 67, ¶ 15, 70 A.3d 1232. We do not do so here, however, because, for the reasons explained in the text, the amount of spousal support awarded to Michelle cannot properly be reduced below the amount prescribed in the judgment, even in response to the increase in court-ordered child support that William will be required to pay.

14

The entry is:

> Judgment as to the child support order vacated. Judgment affirmed in all other respects. Remanded for further proceedings consistent with this opinion.

---

Gene R. Libby, Esq., and Tyler J. Smith, Esq., Libby O'Brien Kingsley & Champion, LLC, Kennebunk, for appellant Michelle L. (George) Sullivan

Theodore H. Irwin, Jr., Esq., and Jacqueline R. Moss, Esq., Irwin Tardy & Morris, Portland, for appellee William A. George

Portland District Court docket number FM-2016-52
FOR CLERK REFERENCE ONLY