MAINE SUPREME JUDICIAL COURT                         Reporter of Decisions
Decision:     2019 ME 5
Docket:       Wal-18-204
Submitted
  On Briefs: November 28, 2018
Decided:      January 15, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, JABAR, HJELM, and HUMPHREY, JJ.

DANIELLE N. (HASHEY) CASHMAN

v.

JAISON W. (HASHEY) ROBERTSON

HUMPHREY, J.

[¶1]  Jaison W. (Hashey) Robertson appeals from a judgment of divorce entered by the District Court (Belfast, *Worth, J.*).  Jaison contends that the court erred by adopting Danielle N. (Hashey) Cashman's proposed judgment and erred in its classification of marital property and the determination of his income.  We affirm the judgment.

## I.  INDEPENDENCE OF THE JUDGMENT

[¶2]  We begin by addressing Jaison's challenge to the legitimacy of the court's judgment.  He argues that the court erred in adopting Danielle's proposed judgement without exercising its independent judgment.

[¶3]  "[A] trial court's verbatim adoption of findings or orders proposed by one party in a case is disfavored, as such an approach suggests that the court

has not carefully reviewed the evidence or applied its independent judgment in making its findings and conclusions." *Yap v. Vinton*, 2016 ME 58, ¶ 10, 137 A.3d 194; *see also Jarvis v. Jarvis*, 2003 ME 53, ¶ 14, 832 A.2d 775. When a court adopts a proposed order without material change, we consider "whether the findings and order reflect the application of judgment by the court and not simply one of the parties." *See Yap*, 2016 ME 58, ¶ 10, 137 A.3d 194.

[¶4] Contrary to Jaison's argument that the court improperly adopted Danielle's proposed judgment verbatim, the divorce order, when read in its entirety, reflects the fair and independent judgment of the court. *See id.* While it is clear that the court drew substantially from portions of Danielle's proposed judgment and imported some language directly, the final divorce order differed substantially from Danielle's proposal in several key areas. The court clearly exercised its independent judgment by departing from Danielle's proposed judgment in its underlying factual findings, allocation of parental rights and responsibilities, discussion of spousal support, award of attorney fees, and allocation of the guardian ad litem costs. The court did not, as Jaison suggests, take Danielle's versions of the facts without basis. Rather, the court exercised its independent judgment and made factual findings that are supported by competent evidence, much of which Jaison himself submitted or, at the very

least, did not dispute.  Further, the trial court was best positioned to review the testimony and credibility of all witnesses and give weight to the evidence submitted.  *See Sloan v. Christianson*, 2012 ME 72, ¶ 29, 43 A.3d 978.  Jaison's challenge to the integrity of the judgment is therefore unpersuasive and we next consider his challenges to the financial aspects of the court's order.

## II.  BACKGROUND

[¶5]  The following facts, which are supported by the evidence, are drawn from the divorce judgment. *See Sullivan v. George*, 2018 ME 115, ¶ 2, 191 A.3d 1168.

[¶6]  Danielle and Jaison were married in Maine on September 13, 2003, and separated in July 2016.  The parties' two minor daughters reside with Danielle, who has always been their primary caretaker.  For much of their marriage, Jaison behaved violently toward Danielle and "intentionally exposed the children to his angry and threatening style."  Both children have expressed hesitation and fear about visiting with him because of his frequent angry outbursts.[1]

---

[1] Jaison's violence has been primarily directed at Danielle.  He has threatened to smash her truck and take the children away.  He has thrown items—including knives—in the home, struck Danielle with a gallon-size bottle of water, pointed a gun at her, and threatened her life while he was intoxicated.  On June 22, 2017, after receiving angry threats from Jaison, Danielle fled the marital home with the children.  When she returned two days later to gather clothing for herself and the

4

[¶7]  Both parties have six-figure incomes.  Danielle earns approximately $144,000 per year and pays for the family's health insurance and childcare expenses.  Jaison owns and operates a construction business that generated gross revenues of $492,453 in 2016.  Although Jaison maintains that in 2016 he had no personal income and suffered a loss of $6,328, the court determined, based on information he provided in two loan applications, his business practices, and his lifestyle choices, that his net personal income was actually $150,000 that year.

[¶8]  The parties own a marital home in Swanville, Maine, with a mortgage of $143,000 and an additional home equity line of credit of $7,600.  The District Court (Belfast, *Worth, J.*) awarded the home to Danielle, but ordered that the home be sold.  Danielle spent approximately $42,000 to prepare the home for sale and is responsible for the costs of maintaining the home until it is sold.

[¶9]  During the pendency of the divorce, Jaison purchased a camp in Orrington, Maine, worth $74,900, from his father.  While no evidence of a deed or payment was presented at trial, evidence of Jaison's social media posts

children, she discovered that Jaison had thrown most of her belongings in a dumpster outside the residence and doused them in gasoline.

announcing his purchase of the property, his interrogatory responses listing the Orrington address as one of his residences, and his efforts to make improvements to the land, including obtaining a demolition permit, was admitted. The court ultimately concluded that the camp was a marital asset and awarded it to Jaison.

[¶10] The court divided the couple's household effects based on the parties' respective possession of those items at the time of trial. In addition, Danielle and Jaison each retained their own bank accounts, credit card debt, and business/retirement accounts. In total, Danielle was awarded property worth $60,000, including her 401(k),[2] and Jaison retained property[3] worth approximately $176,900, including the Orrington camp. Finally, the court ordered Jaison to pay Danielle $20,000 to achieve a more equitable division of the marital estate, an additional $5,556 to reimburse her for the clothing and

---

[2] Danielle's 401(k) has a face value of approximately $97,000 and a net value of $57, 219. She borrowed $10,000 from the principal of her 401(k) to lend to Jaison, $20,000 to make repairs on the home, and $10,000 to replace the items Jaison destroyed.

[3] This property included a 2017 Victory motorcycle, worth $10,000, at issue in this case. Although Jaison and his girlfriend testified that the motorcycle was a birthday gift from her to him, the court concluded that the motorcycle was marital property because Jaison asked Danielle for a $10,000 loan within a week of obtaining the motorcycle and "more likely than not" used that money to repay his girlfriend for the purchase of the motorcycle, and because Jaison did not identify the motorcycle as nonmarital property on his financial statements.

6

other items he intentionally destroyed, and $15,000 to offset Danielle's attorney fees.

## III. DISCUSSION

[¶11] Jaison primarily argues that the court erred in determining that both the motorcycle and the family camp were marital property, and that his income was $150,000 in 2016.

## A. Marital Property

[¶12] We review the District Court's findings of fact as to whether property is marital for clear error. *Bonville v. Bonville*, 2006 ME 3, ¶ 9, 890 A.2d 263; *see also Sloan,* 2012 ME 72, ¶ 2, 43 A.3d 978. Because Jaison did not request further findings of fact, "we will infer that the trial court found all the facts necessary to support its judgment, if those findings are supported by competent evidence in the record." *Adoption of Paisley*, 2018 ME 19, ¶ 27, 178 A.3d 1228. Contrary to Jaison's arguments, there was competent record evidence to support the court's finding that he purchased the motorcycle and the camp and that these assets were marital property. *See Sloan*, 2012 ME 72, ¶ 25, 43 A.3d 978. Although Jaison and his girlfriend testified that he did not purchase the motorcycle or the camp, the court was not required to find this

testimony credible, as it clearly did not.[4] *See Sloan*, 2012 ME 72, ¶ 29, 43 A.3d 978 ("[T]he trial court is not required to accept any testimony or evidence as fact."). "[B]ecause of the trial court's superior vantage point to hear and assess the evidence, we will not substitute our judgment for that of the trial court as to the weight or credibility of the evidence if there is evidence in the record to rationally support the court's result." *Id*. The court's allocation of the parties' marital assets is without error.

B.      Determination of Income

[¶13]   "A court's determination of a party's income in a divorce proceeding is a factual finding that we review for clear error." *Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793. We will vacate a trial court's determination of income only if it is not supported by sufficient, competent record evidence. *See id*. In this case, the court heard testimony from Jaison that in 2016 he incurred a personal loss of approximately $6,000, the same amount reflected on his child support affidavits. The court, however, also heard testimony from Jaison regarding two credit loan applications from 2015 and 2017 on which he reported his annual income as $150,000, and the documents were admitted

---

[4] As to the camp, for example, the court explicitly found that Jaison's "testimony that he has not purchased the property was not believable."

into evidence. "[I]t is the trial court's province to make credibility determinations between competing evidence." *Violette v. Violette*, 2015 ME 97, ¶ 16, 120 A.3d 667. Therefore, the court did not clearly err when it relied on Jaison's business tax returns, two loan applications, and testimony regarding his multiple recreation vehicles, trips, and other lifestyle choices that all suggested that his income far exceeded the $6,000 loss he claimed in that year.[5] *See Sloan*, 2012 ME 72, ¶ 29, 43 A.3d 978.

[¶14]  Contrary to Jaison's arguments, the court's order clearly reflects its independent judgment and is fully supported by competent evidence in the record.  The court did not err in its characterization of the parties' relationship, nor did it abuse its discretion in its classification and division of marital

---

[5] Although the court stated that it "assigns and imputes an income" to Jaison, it actually made a factual finding, based on a reasonable extrapolation from the evidence, that his income was $150,000, an amount substantially higher than his claimed $6,000 loss.  In general, "[i]f a divorce court finds that a party is voluntarily underemployed, the court may impute income to that party for the purpose of calculating that party's child or spousal support obligations." *Ehret v. Ehret*, 2016 ME 43, ¶ 14, 135 A.3d 101 (citations omitted); *see also* 19-A M.R.S. § 2001(5)(D) (2017).  In this case there was no evidence presented, nor did the court find, that Jaison was voluntarily unemployed or underemployed.  Instead, the court simply reviewed all of the evidence pertaining to Jaison's income in 2016—including his business practices, lifestyle choices, tax returns, and loan applications—and determined that the overall weight of this evidence supported the conclusion that his income was, in fact, $150,000 and not the substantially lesser amount he claimed.  The court's determination of Jaison's income amounts to an issue of evidentiary weight and credibility rather than the outright imputation of income typical in many child and spousal support cases where the court assigns a higher income to a party based on that person's income-earning capacity. *See Sloan v. Christianson*, 2012 ME 72, ¶ 29, 43 A.3d 978; *see also, e.g., Ehret*, 2016 ME 43, ¶ 14, 135 A.3d 101; *Wrenn v. Lewis*, 2003 ME 29, ¶ 18, 818 A.2d 1005.  The court did not clearly err in reaching this finding. *See Payne v. Payne*, 2006 ME 73, ¶ 7, 899 A.2d 793.

property. The court is best situated to evaluate the credibility of the parties' testimony and the weight of the evidence introduced at trial, and did so without error in this case.

The entry is:

Judgment affirmed.

---

Joseph W. Baiungo, Esq., Belfast, for appellant Jaison (Hashey) Robertson

Christopher K. MacLean, Esq., and Laura P. Shaw, Esq., Camden Law LLP, Camden, for appellee Danielle N. (Hashey) Cashman

Belfast District Court docket number FM-2017-139
FOR CLERK REFERENCE ONLY